ELIZABETH R. BISS, as Executrix of ROBERT A. BISS, Deceased, Appellant, v TENNECO, INC., et al., Respondents.

Fourth Department, November 3, 1978

### APPEARANCES OF COUNSEL

*Michaels, Michaels, Wineburg, Scollan & Weinstein (Lee Michaels* and *Carl Cannucciari* of counsel), for appellant.

*Gleason, Foulke, Magill & Hewitt (Paul Magill* of counsel), for Tenneco, Inc., respondent.

*Bert F. Halderman* for Coe-Pettit Equipment, Inc., respondent.

### OPINION OF THE COURT

SIMONS, J.

Plaintiff's testator was injured about 10:00 A.M. on December 19, 1972 when a vehicle which he was operating, known as a loader, went off the road and collided with a telephone pole. Decedent sustained a crushed pelvis and severe internal injuries which resulted in his dealth several days later. The accident was unwitnessed but before decedent died, he told various witnesses that he had lost control of the loader. Vincent H. Centers, the third-party defendant and decedent's employer, stated that when he arrived at the scene shortly after the accident, the road was slippery and there were tire marks leading from the road to the wheels of the loader. The vehicle was on the shoulder, tipped at an angle of about 45 degrees to the right and leaning against the telephone pole at the driver's seat. Decedent was pinned between the pole and the loader. The only damage to the vehicle was a bent arm

rest which apparently was damaged when the loader tipped into the pole.

The vehicle was owned by Centers and used in his logging business. He had purchased it about nine months earlier from defendant Coe-Pettit Equipment, Inc. for $18,500 plus the financing charges. J. I. Case Co., a subsidiary of defendant Tenneco, Inc., manufactured the loader.

Plaintiff brought this action alleging multiple theories of liability against defendants Coe-Pettit and Tenneco based upon an alleged design defect in the loader because it was not equipped with a roll-over protection structure, known as a ROPS. Defendants impleaded decedent's employer, third-party defendant Centers. Plaintiff also asserted a claim against the town but that cause of action was dismissed during the opening of counsel. The trial court dismissed the complaint against the remaining defendants at the conclusion of the plaintiff's case, holding that plaintiff had failed to establish that the absence of a ROPS on the loader was a substantial factor in causing decedent's injuries. We disagree with the trial court's determination on proximate cause. Although the design purpose of a ROPS is to "reduce the possibility of an operator being crushed should his vehicle roll over," rather than to avoid injuries resulting from the intrusion of foreign objects in the driver's area,* nevertheless, the jury might have inferred from the evidence that a ROPS would have prevented injury to decedent. We affirm the dismissal, however, because on the evidence produced at trial, defendants did not fail in any duty which they owed to decedent.

■ The action involves a so-called "second-collision" issue and the liability of a manufacturer or supplier for alleged defects in design which do not cause accidents but which cause or enhance the injuries arising from an accident. The Court of Appeals has stated the applicable rule as follows: "[A] manufacturer is obligated to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended [citations omitted], as well as an unintended yet reasonably foreseeable use" *(Micallef v Miehle Co., Div. of*

---

* Enclosed cabs were available for some loaders, designed primarily to protect the loader driver from falling stones, branches, etc. during operation. It is not clear from the record whether they were available for this loader or whether they were of sufficient strength to deflect the telephone pole.

*Miehle-Goss Dexter,* 39 NY2d 376, 385-386; see, also, *Bolm v Triumph Corp.,* 33 NY2d 151, 157-158).

Manufacturers and suppliers are not obliged to supply merchandise that is accident proof but are held to the same standard applied in negligence cases generally, reasonable care (see 2 Harper and James Law of Torts, § 28.3 *et seq.).* By that standard, there was no defect in the manufacture of this loader nor was it defectively designed. By all accounts, the loader was "stable" or "very stable" when operated properly, and the record does not suggest that it differed in any material safety feature from products marketed by the industry generally.

Plaintiff's complaint is that the loader had a "design defect" because defendants failed to provide the vehicle with a roll over protective structure. As so stated, the issue, then, is whether the jury should have been permitted to find that the loader was defectively designed because a ROPS was not supplied as standard, rather than optional, equipment.

■ The proof is undisputed that a ROPS was available to Centers when he purchased the loader. Although defendant Coe-Pettit did not have one in stock, and defendant Tenneco did not manufacture one, a ROPS manufactured by another company had been tested by Tenneco and could have been purchased through Tenneco. That being so, defendants had fulfilled their duty to exercise reasonable skill and care in designing the product as a matter of law when they advised the purchaser that an appropriate safety structure for the loader was available.

■ One of the dangers which may be apprehended in the use of construction equipment is injury from roll over. But that danger increases or lessens according to the job and site for which the equipment is purchased and used. It is not a danger inherent in a properly constructed loader. Neither is it a danger which the manufacturer alone may discover or one which he is more favorably positioned to discover. If knowledge of available safety options is brought home to the purchaser, the duty to exercise reasonable care in selecting those appropriate to the intended use rests upon him. He is the party in the best position to exercise an intelligent judgment to make the trade-off between cost and function, and it is he who should bear the responsibility if the decision on optional safety equipment presents an unreasonable risk to users. To hold otherwise casts the manufacturer and supplier in the

role of insurers answerable to injured parties in any event, because the purchaser of the equipment for his own reasons, economic or otherwise, elects not to purchase available options to ensure safety. The "legal responsibility, if any, for injury caused by machinery which has possible dangers incident to its use should be shouldered by the one in the best position to have eliminated those dangers" *(Micallef v Miehle Co. Div. of Miehle-Goss Dexter, supra,* p 387). In cases such as this, it is the purchaser who best can make the decision and he should bear the loss which results from his failure to do so.

The judgment should be affirmed.

MARSH, P. J., MOULE and WITMER, JJ., concur, HANCOCK, JR., J., not participating.

Judgment unanimously affirmed, without costs.