**Maurice W. DAVIS and Molly M. Davis, Plaintiffs-Appellees,**

v.

**CATERPILLAR TRACTOR CO., Defendant-Appellant.**

No. 82CA1147.

Colorado Court of Appeals, Div. II.

Nov. 7, 1985.

As Modified on Denial of Rehearing Dec. 19, 1985.

Certiorari Denied (Davis) May 5, 1986.

Bragg & Dubofsky, P.C., Frank N. Dubofsky, John W. Hornbeck, Boulder, for plaintiffs-appellees.

Holland & Hart, Harry L. Hobson, William W. Maywhort, Denver, for defendant-appellant.

SMITH, Judge.

Defendant, Caterpillar Tractor Co. (Caterpillar), appeals a judgment awarding damages to plaintiffs, Maurice and Molly Davis. Plaintiff Maurice Davis was severely injured when a dead tree apparently fell across a D6C track tractor manufactured by Caterpillar which Davis was operating to clear debris. The jury returned verdicts finding Caterpillar liable to plaintiffs on theories of negligence and strict liability. Caterpillar contends the trial court erred in refusing to direct a verdict in its favor at the close of the evidence. It argues that, as a matter of law, its D6C tractor was not defectively designed by virtue of not having an overhead protective structure, that the tractor was not rendered unreasonably dangerous because of any failure to warn of defects, and that it had no duty to warn plaintiff of obvious dangers unconnected with the use of its product. We reverse.

In 1979, plaintiff purchased a used D6C tractor for use on his undeveloped mountain land. The used equipment dealer from whom he purchased the tractor advised plaintiff that he was at least its third owner. Caterpillar had manufactured and originally sold the tractor in 1969 at which time the tractor admittedly complied with all governmental safety requirements.

At the time of purchase, plaintiff discussed with the dealer what options and accessories were available for the tractor. He was fully aware that the tractor lacked any sort of overhead canopy. He nonetheless decided against purchasing either a rollover protective structure (ROPS) or a falling object protective structure (FOPS). He had been advised that neither were legally required for operating the tractor on private property, and in the context of the limited work he intended to perform, plaintiff apparently felt an overhead protective structure was unnecessary.

While operating the tractor soon after purchasing it, plaintiff escaped injury when

the tractor slid down an embankment and came to rest on its side. At that time, an experienced heavy equipment operator warned him to purchase an overhead protective structure.

Plaintiff nonetheless continued to operate his tractor without an overhead protective structure until some six months later when he suffered the injuries underlying this action. On that day, plaintiff was using the tractor to clear his land of limbs and debris when he was struck by a dead tree which apparently fell across his tractor. The tree was beetle-killed; plaintiff testified he had not disturbed it in any way. It fell either because of its own weight or because of wind. As a result of this tragic accident, plaintiff is now a quadriplegic.

At the conclusion of the trial, the jury returned a special verdict finding for both plaintiffs on the theory of ordinary negligence. It found their damages to total $2,500,000. Under the comparative negligence doctrine, it charged Caterpillar with 30% of the negligence, the used equipment dealer with 65%, and Davis with 5%. The jury, however, failed to complete the verdict form concerning strict liability.

The trial court accordingly directed the jury to again retire to consider plaintiffs' strict liability claim. The jury thereafter found for plaintiffs and against Caterpillar on that theory, but found damages in the amount of zero. The court thereupon submitted a subsequent verdict form to the jury, asking it to determine the total amount of damages incurred by plaintiffs. The jury returned the subsequent verdict form finding plaintiffs' total damages to be $2,500,000.

The trial court, after polling the jury, entered judgment for $2,500,000 against Caterpillar on the strict liability claim and also entered judgment against Caterpillar and the used equipment company jointly and severally on the negligence claim in the amount of $2,375,000. The court's judgment reflects its holding that, since the total damages suffered by the plaintiffs were $2,500,000, the maximum judgment against the defendants, or any of them,

cannot exceed that amount. Only Caterpillar appeals.

Caterpillar claims that the trial court erred in submitting a subsequent verdict form after the jury had returned what appeared to be inconsistent verdicts. However, because of our disposition of the case on the issue of duty, we find it unnecessary to address, on appeal, the issues raised as a result of the verdicts.

### I. Strict Liability

Caterpillar argues that the trial court erred in submitting the case to the jury on plaintiffs' strict liability claim. It contends that, as a matter of law, the D6C tractor plaintiffs purchased was neither defective nor unreasonably dangerous as alleged because of either design defects or failure to warn. We agree.

### A. Design Defects

Caterpillar argues that, at the time it manufactured and sold plaintiff's D6C tractor, the tractor was not defective in design for failure to attach either a ROPS or FOPS to provide for the operator's safety. We agree and therefore reverse.

It is true that failure to provide safety devices can be the basis of a design defect case in strict liability based upon the Restatement (Second) of Torts § 402A (1965). *Union Supply Co. v. Pust*, 196 Colo. 162, 583 P.2d 276 (1978). A properly manufactured product is defective if its design is "unreasonably dangerous." *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.*, 33 Colo.App. 99, 517 P.2d 406 (1973). However, a product must be dangerous to an extent beyond what would be contemplated by the ordinary consumer or user before it can be "unreasonably dangerous." Restatement (Second) of Torts § 402A Comment i (1965); *Bradford v. Bendix-Westinghouse Automatic Air Brake Co., supra.*

But a product is not "unreasonably dangerous" and, thus, defectively designed if the consumer deliberately chooses to purchase that which he, as a reasonable consumer, should have expected was not as

safe as other products on the market. *See Curtis v. General Motors Corp.*, 649 F.2d 808 (10th Cir.1981). And, if a claim is predicated on a manufacturer's failure to install an added safety device, strict liability will not attach simply because a feasible alternative would have rendered the product safer. *Curtis v. General Motors Corp., supra.*

■ Evidence here shows that Caterpillar designed its D6C tractor for widely varying uses and purposes. D6C tractors are, and have been for several decades, used in a myriad of different jobs and in a number of different environs throughout the world. Caterpillar therefore offers some ninety different options designed to enhance the tractor's safety and utility within the specific context of the purchaser's needs.

Plaintiff best knew the environ and the uses he intended for the tractor when he purchased it. Within that context, the tractor dealer who sold it to him advised plaintiff of Caterpillar's various safety and utility options. Plaintiff deliberately chose to forego purchasing an overhead protective structure for his tractor when he acquired it. Moreover, he continued operating the tractor without overhead protection for some six months after his first mishap with the tractor.

Because plaintiff, as a reasonable consumer, deliberately chose to purchase his tractor without an overhead protective structure, he should have expected that the tractor he purchased was not as safe as it would be with one. Since plaintiff was in the best position to evaluate and eliminate the danger by purchasing an overhead protective safety option, he should accordingly bear the loss resulting from his failure to do so. *See Biss v. Tenneco, Inc.*, 64 A.D.2d 204, 409 N.Y.S.2d 874 (1978). We conclude that, under these circumstances, plaintiff's Caterpillar tractor was as a matter of law, not "unreasonably dangerous" and not defectively designed. *See Curtis v. General Motors Corp., supra.*

### B. Failure to Warn

■ Caterpillar contends that the D6C tractor was not rendered "unreasonably dangerous" to consumers by virtue of any failure by it adequately to warn of inherent dangers because plaintiff's injuries resulted from objective dangers unconnected to any defects in the tractor itself. We also agree with this proposition.

A failure adequately to warn can render a product, otherwise free of defects, defective for purposes of strict liability recovery. *Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983 (1975). Under strict liability, the test is whether the manufacturer's failure adequately to warn of the potentially dangerous propensities of its product rendered the product unreasonably dangerous. *Union Supply Co. v. Pust, supra.* Should the manufacturer fail to give warnings of dangers inherent in the product or in its intended use sufficient to make it safe, the product is in a defective condition "unreasonably dangerous" to the user or consumer. *Hiigel v. General Motors Corp., supra; see also* Restatement (Second) of Torts § 402A comment j (1965).

Thus, strict liability is not the equivalent of absolute liability—the fact that, under certain circumstances, an accident might occur in connection with the use of a product does not necessarily make the product defective and unreasonably dangerous without a warning. *Kysor Industrial Corp. v. Frazier*, 642 P.2d 908 (Colo.1982).

In determining whether, as a matter of law, a defect exists because of a manufacturer's failure to warn, courts must consider the necessity or adequacy of warnings in light of all the evidence. *See Kysor Industrial Corp. v. Frazier, supra.* The requirement that manufacturers give warnings is determined by considering the likelihood of an accident and the seriousness of the consequences of failing to warn. *Hiigel v. General Motors Corp., supra.* The likelihood of an accident depends upon the obviousness of the danger, whether patent or latent. A design is not unreasonably dangerous if the risk is one which anyone

immediately would recognize and avoid. *Curtis v. General Motors Corp., supra.*

Even though the alleged patent nature of a defect is not in and of itself a defense to strict liability, *see Union Supply Co. v. Pust, supra,* the Colorado Supreme Court, in *Kysor Industrial Corp. v. Frazier, supra,* held that, as a matter of law, the manufacturer of a power saw owed no duty to warn plaintiff of a dangerous condition where the existence of that condition was generally known and recognized. The court reasoned that plaintiff failed to present evidence which connected his injury to a patent or latent defect in the saw itself, *i.e.,* factors causing the accident were separable from the product. *See also Camacho v. Honda Motor Co.,* 701 P.2d 628 (Colo.App.1985) (*Certiorari granted* June 10, 1985).

On facts similar to the instant case, the Georgia Court of Appeals in *Stoghill v. Fiat-Allis Construction Machinery, Inc.,* 163 Ga.App. 811, 295 S.E.2d 183 (1982), held that the manufacturer of a bulldozer has no duty to warn the user or consumer of the lack of an overhead protective structure because the manufacturer is under no duty to guard against injury from a patent peril or from an extraneous source which is manifestly dangerous. *Accord Turney v. Ford Motor Co.,* 94 Ill.App.3d 678, 50 Ill. Dec. 85, 418 N.E.2d 1079 (1981). *See also Orfield v. International Harvester Co.,* 535 F.2d 959 (6th Cir.1976) (the absence of ROPS on a bulldozer was not dangerous to an extent beyond plaintiff's knowledge as an ordinary consumer who was fully aware of dangers he would risk in windrowing without the overhead protection structure); *Wagner v. International Harvester Co.,* 611 F.2d 224 (8th Cir.1979) (duty of care of manufacturer is fulfilled if it offers option of rollover protection).

Here, the evidence belies plaintiff's claim that the tractor he purchased was unreasonably dangerous unless accompanied by a warning. Like those factors which injured the plaintiff in *Kysor Industrial Corp. v. Frazier, supra,* plaintiff's injuries here resulted from factors unconnected to either patent or latent defects in the tractor itself. *See also Biss v. Tenneco, Inc., supra.* From plaintiff's own testimony, it is apparent that the tree fell as a result of an "act of God." There was no evidence that plaintiff's use of the tractor disturbed or in any way contributed to its falling. Moreover, plaintiff admitted that, when he purchased his tractor, he had no intention to use it to push down trees.

Caterpillar, as a matter of law, owed plaintiff no duty to warn him of perils not inherent to his tractor, that is, that beetle-killed trees standing on his property might fall upon him while he was seated upon a tractor manufactured by it. Accordingly, the trial court should have granted a directed verdict in favor of Caterpillar on plaintiff's strict liability claim.

## II. Ordinary Negligence

■ Plaintiffs assert that common law negligence principles imposed upon Caterpillar a duty to warn which Caterpillar breached. We disagree.

A manufacturer or seller has a duty to warn of unreasonable dangers associated with the use of its product if the dangers are not obvious to its product users and if it knows or should know of them; breach of this duty constitutes negligence. *Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo. 1984); *Bailey v. Montgomery Ward & Co.,* 635 P.2d 899 (Colo.App.1981); *see Howard v. Avon Products, Inc.,* 155 Colo. 444, 395 P.2d 1007 (1964).

Here, however, Caterpillar argues, we believe correctly, that as a matter of law, it owed no duty to warn plaintiff of the possibility that a beetle-killed tree on his undeveloped property might, for some reason unrelated to the operation of the tractor, fall upon him while he was operating it. Caterpillar also argues that it can neither prevent nor sufficiently divine such act-of-god hazards associated with the use of its tractors to warn purchasers to acquire protective options to obviate the risk.

In accordance with our holding above, we conclude that, as a matter of law, Caterpillar owed plaintiff no duty to warn him of

the obvious danger that standing trees on his land might at any time fall and that such event might indeed injure plaintiff.

Since as we have held as a matter of law that Caterpillar owed no duty to plaintiffs under either a strict liability or ordinary negligence theory, and inasmuch as we are reversing the judgment, we do not find it necessary to address any of the remaining issues raised by Caterpillar on appeal.

The judgment is reversed.

ENOCH, C.J., and METZGER, J., concur.