United States Court of Appeals,
Fifth Circuit.

No. 92-9562.

John A. SCALLAN, et al., Plaintiffs-Appellants,

Travelers Insurance Company, et al., Intervenors-Appellants,

v.

The DURIRON COMPANY, INC., a/k/a Durco, Defendant-Appellee.

Jan. 19, 1994.

Appeal from the United States District Court for the Middle District of Louisiana.

Before HIGGINBOTHAM, DAVIS and SMITH, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

In this products liability case, plaintiffs-appellants, John Scallan and his wife Irene, (collectively Scallan) appeal the district court's grant of summary judgment in favor of defendant-appellee, The Duriron Company (Duriron). We affirm.

I.

The accident which spawned this case occurred at the Allied-Signal (Allied) chemical plant when a pump manufactured by Duriron exploded and released chlorine into the air. Mr. Scallan was injured when he inhaled chlorine while cleaning up after the explosion. The pump that exploded was used to produce freon at the Allied plant, Scallan's place of employment. The pump operated with a "two-diaphragm" system, in which a clear, inert fluid separated two Teflon diaphragms. Behind one diaphragm was the fluid being pumped, liquid chlorine. The other diaphragm contained the hydraulic fluid in the pump mechanical drive mechanism. Because Teflon has limitations, the chlorine or the hydraulic fluid will eventually permeate the diaphragm and mix with the inert fluid. To monitor for this dangerous and inevitable leakage, the pump in this case was equipped with a manual sight glass through which an observer can see a change of color in the clear inert fluid when it is contaminated with one of the other fluids.

Several hours before the accident, the railroad tank car holding the liquid chlorine was

pumped dry and the chlorine flow to the pump was diminished or possibly cut off completely. Later, the chlorine flow was again disrupted when the nitrogen supply used to pressurize the railroad tank car ran low. When the nitrogen supply was refurbished, the chlorine flow resumed to its normal rate. Within minutes, however, the pump exploded, dispersing chlorine into the air.

Scallan concedes that before the explosion an Allied employee had sealed the sight glass detector, rendering inoperable the only leak detection system on the pump. However, Scallan insists that the sight glass was sealed because it was useless. Scallan claims that because the sight glass was not equipped with an internal illumination system anyone looking into it would see only blackness. Scallan also asserts that the sight glass continually leaked.

When Duriron sold the pumps to Allied, Duriron also manufactured an automatic sensing annunciator, which, if supplied on a pump, would give an audible warning of any chlorine leak. Duriron asserts that Allied was aware of the availability of the automatic sensing annunciator and chose to have its pumps equipped with a manual sight glass detector.

The district court granted Duriron's summary judgment motion, because as a matter of law plaintiff could not establish that the pump was unreasonably dangerous in design. The court focused on two uncontested facts: Allied had knowingly selected the manual sight glass detection system over the automatic annunciator and had disabled the system prior to the explosion.

## II.

### A.

"We review a summary judgment de novo, applying the same criteria as the district court." *Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir.1991). Although summary judgment is rarely appropriate in products liability cases, *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167 (5th Cir.1990), it is nonetheless appropriate if there is "no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). An issue is not genuine when there is nothing more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d

538 (1986).  In sum, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial.' "  *Id.* at 587, 106 S.Ct. at 1356.

B.

The parties agree that this case is governed by Louisiana products liability law as set forth in *Halphen v. Johns-Manville Sales Corp.,* 484 So.2d 110 (La.1986).[1]  In *Halphen,* the Louisiana Supreme Court set forth the four available theories of recovery for products liability cases in Louisiana:

1. A product may be unreasonably dangerous per se;

2. A product may be unreasonably dangerous in construction or composition;

3. A product may be unreasonably dangerous due to the manufacturer's failure to warn;

4. A product may be unreasonably dangerous in design because

> (a) a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product;

> (b) Although the product is not unreasonably dangerous per se under the risk-utility balancing test, alternative products were available to serve the same needs with less risk of harm;  or

> (c) Although the product is not unreasonably dangerous per se under the risk-utility balancing test, there was a feasible way to design the product with less harmful consequences.

*Id.* at 114-15.

Scallan does not argue that the pump was unreasonably dangerous per se, but does assert claims based on the remaining three theories.  We examine each theory in turn to determine if a genuine issue of fact exists.

1) *Unreasonable Danger in Construction or Composition*

To prevail on the theory that the pump was unreasonably dangerous in construction or composition, Scallan must show that the pump contained a flaw at the time it left Duriron's control.  More specifically, Scallan must show that the pump deviated from the design or plan because of an

---

[1]The Louisiana Products Liability Act, (LPLA) LSA-R.S. 9:2800.51 et seq., became effective September 1, 1988 and is not applied retroactively.  *Cates v. Sears, Roebuck & Co.,* 928 F.2d 679 (5th Cir.1991).  Thus, because the accident in this case occurred on August 2, 1988, the case is governed by pre-LPLA law.

error in the manufacturing process and that the deviation made the pump more dangerous than it was originally designed to be. *See Weber v. Fidelity & Casualty Ins. Co. of N.Y.,* 250 So.2d 754 (La.1971); *Halphen,* 484 So.2d at 114. Scallan seeks to prevail under this theory by pointing to the fact that Duriron knew the pump was to be used to meter chlorine flow and that the pump was not equipped with an automatic sensing annunciator. Even assuming these facts to be true, Scallan's reliance on the construction or composition defect theory is misplaced; Scallan does not allege that the pump deviated from its design. In fact, plaintiff's pump expert, Mr. Heinz Bloch, testified that the pump contained no defects in composition or manufacture. The significance of the lack of an automatic annunciator is properly treated under the design defect theory, discussed below.

2) *Duty to Warn*

Scallan contends next that Duriron had a duty to warn that, "when used in a chlorine feed system, the pump should either be used in conjunction with the automatic sensing annunciator system and/or used with an inert hydraulic fluid."

Duriron responds that a manufacturer does not have a duty to warn of dangers that are obvious "to the ordinary user" and has only a limited duty to warn a sophisticated user of a danger if it knew or should have known of the risk involved. *See Beck v. Somerset Technologies, Inc.,* 882 F.2d 993, 997 (5th Cir.1989); *Davis v. Avondale Indus., Inc.,* 975 F.2d 169 (5th Cir.1992). First, it cannot seriously be contended that Allied is not a sophisticated user. Scallan's own expert, Mr. Heinz Bloch, recognized that Allied "ranks among the world leaders" in chemical process.

Moreover, the record is replete with evidence demonstrating that Allied knew that a diaphragm failure could cause hydraulic fluid and chlorine to leak, which could lead to an explosion. The record is also conclusive that Allied knew of the danger of using hydrocarbon-based hydraulic fluid.[2] *Halphen* only imposes a duty to warn "of any danger inherent in the normal use of the product which is not within the knowledge of or obvious to the ordinary user." The danger inherent in

---

[2]Allied's Manager of Process Safety acknowledged that Allied knew of all the potential risks extant in using a hydraulic pump to pump chlorine, including permeation of the Teflon diaphragms and the risk of chemical reaction if chlorine mixed with hydrocarbon-based oil in the drive section of the pump.

pumping chlorine through a hydraulic pump is obvious to an ordinary user of hydraulic pumps, such as Allied. Consequently, no genuine issue of material fact exists as to whether Duriron had a duty to warn that the pump should be fitted with an automatic sensing mechanism or used with an inert hydraulic fluid.

3) *Unreasonable Danger in Design*

Under *Halphen,* "a product may be unreasonably dangerous because of its design for any of three reasons:" (1) the danger-in-fact of the machine outweighs the utility of the product; (2) alternative, less dangerous products were available; or (3) there was a feasible, safer, alternative design for the product. *Halphen,* 484 So.2d at 115.

Scallan first argues that an alternative, less dangerous product was available in the form of the single-diaphragm "Pulsafeeder pump." Scallan claims the Pulsafeeder pump was less dangerous because the chlorine diffused through a vent built into the pump, allowing the chlorine to escape without reaction with the hydraulic fluids. Moreover, according to Scallan, the Pulsafeeder single-diaphragm pumps had been used at Allied for many years without incident, proving that single-diaphragm pumps offer substantially less risk of harm than dual-diaphragm pumps.

Scallan's argument is without merit for two reasons. First, the record does not support the inference that venting chlorine into the atmosphere is a safer design. In fact, Scallan's injuries resulted from his inhalation of chlorine which had vented to the atmosphere after the explosion. Our reluctance to accept this argument is buttressed by the testimony of Richard F. Schwab, an Allied supervisor, who stated that escaping chlorine gas was "a worrisome concern of the plant prior to the installation of these [Duriron two-diaphragm] pumps."

Second, the pump was not designed to diffuse chlorine through a vent. To the contrary, Schwab testified that the single diaphragm pump *did not prevent* the mixing of chlorine and hydrocarbon in the event of diaphragm failure. When chlorine and hydrocarbon mixed in the past, an explosion was avoided because, under the particular temperature conditions, the chlorine vented to the atmosphere. Thus, the absence of an explosion with the single-diaphragm pump was not

attributable to its superior design, but "just good fortune."[3] Moreover, the Statesir article, relied on by Scallan, recommends the use of a two-diaphragm pump over the older, single-diaphragm model.

Scallan argues next that the district court erred in granting summary judgment because he produced evidence that a safer, alternative design existed for the pump—a pump with an automatic annunciator rather than a sight glass detection system. Scallan cites *Halphen* for the proposition that "a product may be unreasonably dangerous because of its design ... [if] there was a feasible way to design the product with less harmful consequences." *Id.* (citing various treatises).

As evidence that the automatic annunciator is safer than the manual sight glass, Scallan points to the testimony of Mr. Bloch, Scallan's pump expert, who testified that although either the manual or automatic system would be acceptable, he prefers the automatic annunciator because it decreases the risk of operator negligence and human error. The district court rejected Scallan's claim that the pump was defectively designed due to its lack of an automatic annunciator because Allied had knowingly selected the manual monitoring system.

The district court properly focused on the critical fact that Duriron offered an automatic annunciator as an option on the P/D II pump. The record is uncontradicted that Allied elected to purchase the pump with the manual sight glass instead. Allied had full knowledge of its processes and procedures for handling the chlorine in its plant. According to Richard Schwab, an Allied supervisor, Allied did not divulge all these facts to Duriron. To determine whether the pump would meet its needs, Allied engineers made a detailed study of the specifications and actually visited the Duriron facility for performance testing of the P/D II pump. Upon Allied's request, adjustments were

---

[3]Schwab's testimony was as follows:

> Q. How did the Lapp Pulsafeeder [single-diaphragm] pump prevent a reaction between the chlorine and the hydrocarbon when the single diaphragm failed?
>
> A. They didn't prevent.
>
> Q. The reaction occurred?
>
> A. The reaction might very well have occurred, yes. The only way that it just didn't happen was probably because conditions weren't just right and it just vented out to the atmosphere. I think it's just good fortune, it could very well have occurred.

made to the pump after the performance tests were completed. The only inference permissible from the summary judgment evidence is that Allied made an informed decision to purchase the pump with the sight glass rather than the annunciator. The question therefore remains whether Duriron has potential liability under a design defect theory for failing to furnish an arguably safer warning device when the purchaser rejected Duriron's offer to provide the device.

Scallan points to *Bacile v. Parish of Jefferson,* 411 So.2d 1088 (La.App. 4th Cir.1981), *writ denied,* 415 So.2d 950 (La.1982), for the proposition that a manufacturer may not avoid liability for a product unreasonably dangerous in design by shifting the responsibility for the product's design to the purchaser or another party. *See also McCrossen v. Renovate, Inc.,* 548 So.2d 92 (La.App. 5th Cir.1989). In *Bacile,* the defendant manufacturer fabricated drain grates according to design specifications supplied to it by the purchaser. The plaintiff fell through the grate because the openings between the grate bars were too large. The defendant manufacturer argued that it was not liable because it had not designed the grates, but had merely followed the purchaser's design. The court refused to exculpate the defendant manufacturer, stating that:

> [t]he manufacturer is ... liable to plaintiff for its failure to manufacture the grate in a reasonably safe condition for its intended use. That the manufacturer manufactured the grate in accordance with the [purchaser's] design and specifications would not exculpate the manufacturer toward a person injured in a normal use of the thing; a manufacturer who knows the intended use cannot join in creating an unreasonable risk of injury by manufacturing a thing that presents such a risk in its intended use.... [T]he manufacturer's liability ... exists irrespective of whether it merely followed an unreasonably dangerous design.

*Id.* at 1090.

*Bacile* is distinguishable from today's case. The manufacturer in *Bacile* did not present an option to the purchaser to furnish the grate with smaller openings. In this case, we are persuaded that Duriron fulfilled its duty to provide the arguably safer product by offering the annunciator to Duriron.

Our unwillingness to extend *Bacile* to the facts of this case is buttressed by our inability to find authority from any jurisdiction that would support Scallan's argument that a manufacturer is liable for the failure to incorporate a safety device that the purchaser knowingly rejects. The authority we have found on the issue is uniformly contrary to Scallan's position.

We find persuasive the court's analysis in *Biss v. Tenneco, Inc.,* 64 A.D.2d 204, 409 N.Y.S.2d

874 (N.Y.1978). In *Biss,* the plaintiff's decedent was fatally injured while working on a loader during the course of his employment. The plaintiff brought suit against the manufacturer of the loader, claiming it was defectively designed because it lacked a roll over protecti on device (ROPS). The proof was undisputed that the ROPS was available to the plaintiff's employer when he purchased the loader. The court held that the manufacturer "fulfilled [its] duty to exercise reasonable skill and care in designing the product as a matter of law when [it] advised the purchaser that an appropriate safety structure for the loader was available." *Id.* at 876.

It makes no practical sense to impose liability on Duriron for failing to equip this pump with an optional warning device that Allied knowingly rejected. Allied was a world leader in chemical production with personnel dedicated to reviewing equipment and deciding whether it met its specialized needs. *See Taylor v. Paul O. Abbe, Inc.,* 516 F.2d 145, 148 (3d Cir.1975) (stressing the importance of the purchaser's experience). Allied was in a much better position than Duriron to evaluate the various warning devices Duriron made available on this pump and decide which device would make the pump safest in its plant. *See Davis v. Caterpillar Tractor Co.,* 719 P.2d 324, 326-27 (Colo.Ct.App.1985) (citing *Curtis v. General Motors Corp.,* 649 F.2d 808 (10th Cir.1981)); *see also Linegar v. Armour of America, Inc.,* 909 F.2d 1150 (8th Cir.1990). To hold Duriron liable for the absence of a safety device declined by the purchaser "casts the manufacturer ... in the role of insurer[] answerable to injured parties in any event, because the purchaser of the equipment for his own reasons, economic or otherwise, elects not to purchase available options to ensure safety." *Biss,* 409 N.Y.S.2d at 877; *see also* Michael Hoenig, *Products Liability: Substantive, Procedural and Policy Issues* 64-65 (1992). The district court correctly rejected Scallan's defective design claim predicated on this theory.

### III.

Because the district court correctly granted Duriron's motion for summary judgment, its judgment is

AFFIRMED.