70 F.Supp.2d 1020 (1999)
Charles S. DAVIDSON, Plaintiff,
v.
BESSER COMPANY, Defendant.
No. 4:96 CV 449 DDN.
United States District Court, E.D. Missouri, Eastern Division.
October 15, 1999.
*1021 *1022 Gary E. Snodgrass, Kimberly Cates Wiseman, Rabbitt and Pitzer, St. Louis, MO, J. Mark Kell, Kell and Flach, St. Charles, MO, for Charles S. Davidson, plaintiff.
T. Michael Ward, Senior Associate, James E. Whaley, Brown and James, P.C., St. Louis, MO, for Besser Company, defendant.

MEMORANDUM AND ORDER
NOCE, United States Magistrate Judge.
This action is before the Court upon the motion of defendant Besser Company for summary judgment (Doc. No. 63). The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge. 28 U.S.C. § 636(c).
Plaintiff Charles S. Davidson brought this action against defendant Besser Company, alleging strict product liability and negligence. Plaintiff alleges that on August 21, 1991, he was employed as a production supervisor for F.F. Kirchner, Inc., a company which manufactures concrete building blocks. On that day, plaintiff and a co-worker attempted to repair Kirchner's large concrete block-making machine, a Super Vibrapac Model V3-12-667, which had been manufactured by defendant. While plaintiff was working on the machine, his co-worker activated the machine. The machine caught plaintiff's hand and injured him. Plaintiff alleges that the block-making machine, when defendant sold it, was defective and unreasonably dangerous because it did not have: (i) an interlock perimeter guard to prevent it from starting up during repair; (ii) audible warning horns that would sound prior to the machine starting; and (iii) proper warning labels. See Complaint ¶¶ 13, 17, 25, 29, 33.
"Summary judgment is appropriate when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law." Jaurequi v. John Deere Company, 971 F.Supp. 416, 419 (E.D.Mo.1997), aff'd, Jaurequi v. Carter Mfg. Co., 173 F.3d 1076 (8th Cir.1999); see also Fed.R.Civ.Pro. 56(c). When presented with a motion for summary judgment, "the Court must determine whether there `are any genuine factual issues that properly can be resolved only by the finder of fact because they may reasonably be resolved in favor of either party.'" Jaurequi, 971 F.Supp. at 419 (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must also view the facts in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences drawn from the facts. Id.
The Court has subject matter jurisdiction over this action, based upon the parties' diversity of citizenship and the amount in controversy. 28 U.S.C. § 1332. In such a case, the Court must apply the appropriate state's substantive law, as would be selected by the Missouri state courts. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Birnstill v. Home Savings of America, 907 F.2d 795, 797 (8th Cir.1990). Missouri courts follow the principal contacts-most significant relationship rule of § 145 of the Restatement (Second) of Conflicts of Law. Kennedy v. Dixon, 439 S.W.2d 173, 184 (Mo.1969) (en banc); Roy v. Landers, 467 S.W.2d 924, 925 (Mo.1971) (applying the principal contacts rule to a *1023 malicious prosecution tort claim); Dunaway v. Fellous, 842 S.W.2d 166, 168 (Mo. Ct.App.1992); see also Moses v. Union Pacific Rr., 64 F.3d 413, 418 (8th Cir. 1995). In applying the Missouri choice of law rule, this Court must consider the following specific Restatement factors:
(a) the place where the injury occurred;
(b) the place where the conduct causing the injury occurred;
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and
(d) the place where the relationship, if any, between the parties is centered.
Dunaway, 842 S.W.2d at 168. After considering these factors, the Court determines that Missouri has the paramount interest in the litigation. Plaintiff is a Missouri citizen, defendant sold its block-making machine to plaintiff's employer in Missouri, the machine was used in Missouri, and plaintiff's injury occurred in Missouri. Thus, Missouri courts would apply the substantive law of Missouri in this case. Galvin v. McGilley Mem. Chapels, 746 S.W.2d 588, 590-91 (Mo.Ct.App.1987).
Defendant is entitled to summary judgment on all of the claims that allege the block-making machine was defective because it lacked an interlock perimeter guard and inadequate warning labels. On April 7, 1997, April 12, 1999, and May 7, 1999, the Court sustained defendant's motion in limine to exclude the opinion testimony of Boulter Kelsey, plaintiff's expert witness, who would testify at trial that the lack of an interlock device rendered the block-making machine unreasonably dangerous.[1] Whether or not the defendant's block-making machine was unreasonably dangerous, because it lacked an interlock safety device, is a conclusion that is sufficiently technical and complex to be outside the common knowledge or experience of a jury; expert testimony is necessary to establish liability in such a case. Eppler v. Ciba-Geigy Corporation, 860 F.Supp. 1391, 1395 (W.D.Mo.1994). Because the Court has prohibited Mr. Kelsey from testifying that the block-making machine was defective without the interlock safety device, plaintiff's case lacks legally sufficient evidence on those claims and defendant is entitled to summary judgment on them. See Dancy v. Hyster Company, 127 F.3d 649, 653-54 (8th Cir.1997) (expert testimony required under Arkansas law), cert. denied, 523 U.S. 1004, 118 S.Ct. 1186, 140 L.Ed.2d 316 (1998); Pestel v. Vermeer Mfg. Co., 64 F.3d 382 (8th Cir.1995) (directed verdict for manufacturer was affirmed in a products liability action where plaintiff's expert was barred from testifying for failing to meet the Daubert standard); Jaurequi, 173 F.3d at 1085.
Plaintiff's claims based upon insufficient warnings are subject to the same principles. A failure to warn claim requires admissible expert testimony that additional or other warnings might have altered the behavior of the plaintiff. Jaurequi, 173 F.3d at 1085. In the present case, plaintiff's expert acknowledged that he had no criticism of the pictorial warnings for the machine and that his criticism would be limited to the absence of an interlocking device and a start-up aural warning device. See Kelsey Depo., Exh. 5, at 31.
As a result of the Court's rulings on the admissibility of the opinions of Mr. Kelsey, plaintiff now has only one viable theory of product defect, those allegations which are based upon the absence of an aural start-up warning device. On these claims, some of the facts, which relate to the pending motions, are without genuine dispute. Defendant manufactured and sold to Kirchner the subject block-making machine prior to plaintiff's injury and the machine *1024 was manufactured without an aural warning safety device. Before plaintiff's injury on August 21, 1991, defendant sent Kirchner a written letter, dated September 28, 1990, which offered to sell to Kirchner an aural start-up warning device for the block-making machine. See Motion Exh. 2, filed May 10, 1999, Wienke Depo. Exh. 4, at 6, 27-30. The letter stated in relevant part:
This is to alert you to the availability of a new safety device for all Besser Company block making machines.
We currently have Start-up Warning Horn Kits which when installed provide for a seven second delay prior to machine start during which the warning horn will sound. Although the lockout procedure remains as the primary safety aspect for repair and maintenance situations, the warning horn could possibly help to avoid accidents when employees mistakenly or intentionally disregard OSHA Lockout Law. We urge you for the additional safety of your employees to purchase those items for Besser Company made block machines....
Motion Exh. 3. Paul Wienke, Vice-President for Manufacturing of F.F. Kirchner, Inc., testified in his deposition that Kirchner actually purchased one of these Start-up Warning Horn Kits, but he did not remember whether the purchase was before or after plaintiff's injury. Motion Exh. 2, Wienke Depo. at 30. In his deposition, Mr. Kelsey testified that, if Kirchner had installed such a device on the machine that injured plaintiff, the injury would have been avoided. See Motion Exh. 1, Kelsey Depo. at 43.
Defendant relies upon Morrison v. Kubota Tractor Corporation, 891 S.W.2d 422 (Mo.Ct.App.1994), and argues that it is entitled to summary judgment on plaintiff's remaining claims, which allege the absence of the aural start-up warning device. Defendant argues that it is not liable, because, before plaintiff was injured, defendant offered and sold such a device to plaintiff's employer for installation on the allegedly defective machine. In Morrison the family of David Morrison sued Kubota Tractor Corporation, the manufacturer of a utility tractor, after the tractor overturned while Morrison was operating it, killing him. Id. at 423. Plaintiffs alleged negligence and strict products liability, claiming that the tractor was defective and unreasonably dangerous because it was not manufactured with a roll over protection system ("ROPS"). Id. at 424. The Missouri circuit court directed a verdict in the defendant-manufacturer's favor on the negligence claim. On direct appeal, the Missouri Court of Appeals affirmed, ruling that the defendant had no liability because, when the tractor was purchased by the decedent, the manufacturer's agent advised him that a ROPS was available for purchase and installation. Id. at 428. The court held:
Because Kubota had no duty to install a ROPS in the first place and fulfilled any duty it might have had by offering one as optional equipment on the tractor purchased by Morrison, the trial court correctly directed a verdict for Kubota on the negligence claim predicated on that theory.
Id. at 429. The court further stated that "`[i]f knowledge of available safety options is brought home to the purchaser, the duty to exercise reasonable care in selecting those appropriate to the intended use rests upon him.'" Id. at 428 (quoting Biss v. Tenneco, Inc., 64 A.D.2d 204, 409 N.Y.S.2d 874, 876-77 (1978)).
In Biss v. Tenneco, the decedent-employee was fatally injured when the loader vehicle he was operating tipped over and pinned him against a telephone pole. Decedent's employer had purchased the loader without a roll over protective structure (ROPS), although a ROPS was available to the employer at the time of purchase. The Supreme Court of New York ruled that the defendants, the manufacturer and the distributor of the loader, could not be held liable for the death of plaintiffs' decedent, because the employer-purchaser of the *1025 loader was in a better position than the defendants to consider the cost and functional need for the ROPS in the operation of the loader.
[I]t is [the employer-purchaser] who should bear the responsibility if the decision on optional safety equipment presents an unreasonable risk to users. To hold otherwise casts the manufacturer and supplier in the role of insurers answerable to injured parties in any event, because the purchaser of the equipment for his own reasons, economic or otherwise, elects not to purchase available options to ensure safety. The "legal responsibility, if any, for injury caused by machinery which has possible dangers incident to its use should be shouldered by the one in the best position to have eliminated those dangers" (Metcalf v. Miehle Co. Div of Miehle-Goss Dexter, supra, p. 387). In cases such as this, it is the purchaser who best can make the decision and he should bear the loss which results from his failure to do so.
Biss v. Tenneco, Inc., 409 N.Y.S.2d at 877. See also Wagner v. International Harvester Co., 611 F.2d 224, 231 (8th Cir.1979) (applying Minnesota law), and Scallan v. Duriron Company, Inc., 11 F.3d 1249, 1254 (5th Cir.1994) (applying Louisiana law), also cited by the Missouri Court of Appeals in Morrison.
The principles of Morrison and the related cases relied upon by defendant must be applied to the essential elements of plaintiff's strict liability claim. The essential elements of this cause of action are the following: (1) defendant sold the block-making machine during the course of its business; (2) the machine was defective when defendant sold it to plaintiff's employer; (3) the machine was used in a manner that was reasonably anticipated; and (4) plaintiff was damaged as a direct result of the defective condition that existed when the machine was sold. Vanskike v. ACF Industries, Inc., 665 F.2d 188, 203 (8th Cir.1981).
In Morrison, the Court of Appeals ruled that, as a matter of law, if the defendant-manufacturer had a legal duty to manufacture the tractor with a ROPS, that duty was fulfilled when the defendant's agent made Morrison aware the ROPS was available for purchase as an option when he bought the tractor without the ROPS. Morrison, 891 S.W.2d at 428. The heart of the court's ruling in Morrison related to the second essential element of the strict liability cause of action; it ruled as a matter of law that the tractor Morrison bought was not defective.
Similarly, in Scallan v. Duriron Co., Inc., 11 F.3d 1249 (5th Cir.1994), the condition of the product at the time of purchase was critical to the court's ruling. The plaintiff in Scallan argued that an automatic annunciator warning device, which plaintiff's employer could have purchased with its pumps but did not, was a better warning device for the pump than the sight glass device in use at the time of his accident. The Court of Appeals ruled it made
no practical sense to impose liability on Duriron for failing to equip [the] pump with an optional warning device that [the plaintiff's employer] knowingly rejected.... [The employer] was in a much better position than Duriron to evaluate the various warning devices Duriron made available on this pump and decide which device would make the pump safest in its plant.... To hold Duriron liable for the absence of a safety device declined by the purchaser "casts the manufacturer ... in the role of insurer [ ] answerable to injured parties in any event, because the purchaser of the equipment for his own reasons, economic or otherwise, elects not to purchase available options to ensure safety." Biss, 409 N.Y.S.2d at 877.
Scallan, 11 F.3d at 1254.
The holding of Morrison does not detract from the established principle of Missouri law that manufacturers have a *1026 duty to manufacture products which are not defective. Watkins v. Toro Co., 901 S.W.2d 917, 920 (Mo.Ct.App.1995); Duke v. Gulf & Western Mfg. Co., 660 S.W.2d 404, 414-416 (Mo.Ct.App.1983). In the case at bar, the Court has ruled that the testimony of expert witness Kelsey about the lack of an aural warning device on the concrete block-making machine would be relevant to whether or not the machine was defective when it was manufactured and sold. See Memorandum and Order, filed April 7, 1997, at 6-9.
The principles of Morrison, nevertheless, have relevance to the case at bar. They relate not to the issue of whether the machine was defective when sold, but to whether the machine was used in a manner reasonably anticipated by defendant at the time of the sale and to whether the condition of the machine at the time of the sale caused the plaintiff's injury. The Court has found persuasive the opinion reported in Balido v. Improved Machinery, Inc., 29 Cal.App.3d 633, 105 Cal.Rptr. 890 (1972).
Balido involved a worker who was injured while working on a plastic injection molding press, which closed on her hand when she was adjusting a component. After the press was originally sold and then resold to a subsequent owner, the defendant-manufacturer advised the subsequent owner, plaintiff's employer, that the press did not meet California's industrial safety standards and suggested that a package of safety devices be purchased for the press. The plaintiff's employer did not do this. Balido, 29 Cal.App.3d at 638, 105 Cal.Rptr. 890. The trial court held that the employer's disregard of the warnings given by the defendant-manufacturer was a superseding cause of the plaintiff's injury which relieved the defendant of liability. The California Court of Appeals reversed. It held in part that, where the product's operation involves a substantial risk of injury, whether a third party-employer's action was a superseding cause of the plaintiff's injury is an issue of fact for a jury under the principles of Section 452(2) of the Restatement (Second) Torts, Comment f. Id. at 645-649, 105 Cal.Rptr. 890.
Under the law of Missouri,
[q]uestions of proximate cause and efficient, intervening cause require each case to be decided on its own facts.... Whether proximate cause exists is usually a question for the jury, but a court may decide the issue of proximate cause "when the evidence reveals the existence of an intervening cause which eclipses the role the [original actor's negligence] played in the plaintiff's injury." [Tompkins v. Cervantes, 917 S.W.2d 186, at 190 (Mo.Ct.App.1996)]. However, the mere existence of an intervening act is not decisive. The intervening act must be a superseding cause that is independent of the original actor's negligence and severs the connection between the original actor's conduct and the plaintiff's injury as a matter of law. Id. at 190-91. For an intervening act to relieve the original tortfeasor from liability, the act cannot be a foreseeable consequence of the original act of negligence. Id. at 191.
Buchholz v. Mosby-Year Book, Inc., 969 S.W.2d 860, 862 (Mo.Ct.App.1998) (citation omitted). Stated otherwise:
"An intervening cause is a new and independent force which so interrupts the chain of events as to become the responsible, direct, proximate and immediate cause of the injury, rendering any prior negligence too remote to operate as the proximate cause." (citation omitted). It may not consist of an act of concurring or contributing negligence. Moreover, it may not be one which is itself a foreseeable and natural result of the original negligence.
Schaffer v. Bess, 822 S.W.2d 871, 877 (Mo. Ct.App.1991). The Missouri Court of Appeals has also said:
Of particular assistance in this inquiry is the RESTATEMENT (SECOND) OF TORTS § 447 (1965) ...:

*1027 The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person so acted, or
(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.
Amador v. Lea's Auto Sales & Leasing, Inc., 916 S.W.2d 845, 853-54 (Mo.Ct.App. 1996). See also Metzger v. Schermesser, 687 S.W.2d 671, 673-74 (Mo.Ct.App.1985).
Where there is a question upon which reasonable minds may differ regarding the foreseeability of the subsequent negligence acting upon antecedent negligence it is proper to permit a jury to determine whether the antecedent negligence was totally superseded or was contributory, and, if so, in what degree.
Metzger, 687 S.W.2d at 674. See also Tompkins, 917 S.W.2d at 190-91.
In the case at bar, the actions of plaintiff's employer in purchasing the aural warning safety device but not installing it in the machine that injured plaintiff, in the face of the literature sent by the defendant, are not entirely shown on the face of the produced evidence. The Court cannot say that the evidentiary record is unequivocal on the fact issues of whether Kirchner's actions were or were not foreseeable and were a superseding cause of the injury.
Defendant argues that it did not have a legal obligation, without a governmental recall mandate, to retrofit the concrete block-machine. The Court agrees. See Horstmyer v. Black & Decker, (U.S.), Inc., 151 F.3d 765, 773 (8th Cir.1998); Wallace v. Dorsey Trailers Southeast, Inc., 849 F.2d 341, 344 (8th Cir.1988). In this case, however, defendant's liability may be founded upon its failure originally to manufacture the machine with the safety device and upon the foreseeability that the purchaser would not later install a suggested safety device. Balido v. Improved Machinery, Inc., 29 Cal.App.3d at 645-646, 105 Cal.Rptr. 890.
The Court concludes that there are genuine issues of material fact. Therefore,
IT IS HEREBY ORDERED that the motions of the defendant for summary judgment (Doc. No. 63) and for judgment as a matter of law with regard to all of the claims that allege the block-making machine was defective because it lacked an interlock perimeter guard and inadequate warning labels are granted.
IT IS FURTHER ORDERED that the motion of the defendant for summary judgment (Doc. No. 63) and for judgment as a matter of law with regard to the claims that allege the block-making machine was defective because it lacked an aural warning system are denied.
IT IS FURTHER ORDERED that a status-scheduling telephone conference of the Court with counsel for all parties is set for October 26, 1999, at 1:00 p.m.
NOTES
[1] The Court overruled defendant's motion to exclude Mr. Kelsey's opinion that the lack of an aural warning device also made the machine defective. On plaintiff's allegations about defendant's warnings, Mr. Kelsey testified he had no criticism of defendant's warnings on the machine. See Kelsey Depo., Motion Exhibit 5, at 31.