# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1536

_____

A.J., by and through her next friend Lori Dixon; D.M., by and through his next
friend Shannon Mers; B.M., by and through his next friend Shannon Mers; The
Estate of Robert Jason Johnson

*Plaintiffs - Appellants*

Deborah Lee Johnson

*Intervenor Plaintiff*

v.

Donnell W. Tanksley, in his individual capacity; Matthew J. Waggoner, in his
individual capacity; Perri A. Johnson, in his individual capacity

*Defendants - Appellees*

Yolanda Diggs; Bryant Howard

*Intervenors*

Board of Police Commissioners of the City of St. Louis; Richard Gray, in his
official capacity as President of the Board of Police Commissioners of the City of
St. Louis; Thomas Irwin, in his official capacity as Vice-President of the Board of
Police Commissioners of the City of St. Louis; Erwin O. Switzer, in his official
capacity as Purchasing Member of the Board of Police Commissioners of the City
of St. Louis; Francis G. Slay, in his official capacity as Ex-Officio Member of the
board of Police Commissioners of the City of St. Louis; Bettye Battle-Turner, in
her official capacity as Treasurer of the board of Police Commissioners of the City
of St. Louis

*Defendants*

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 13, 2016
Filed: May 16, 2016

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Robert Jason Johnson was killed in a collision between his motorcycle and a car, and his insurance company denied a claim for accidental death benefits. Later, a jury found against his estate and minor children (collectively, the estate) in a wrongful death suit they brought against the driver of the car. The estate then filed the present suit in federal court against the St. Louis Board of Police, various police board officials, and three police officers, alleging civil rights violations stemming from the police's handling of the accident. The district court[1] dismissed the police board and the police board officials from the case and granted summary judgment in favor of the three police officer defendants. The estate appeals the grant of summary judgment, as well as the district court's denial of a motion for sanctions arising out of a discovery dispute. Finding no reversible error in the district court's rulings, we affirm.[2]

---

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

[2]We have jurisdiction pursuant to 28 U.S.C. § 1291.

-2-

# I

Because this appeal comes to us from a grant of summary judgment to the defendants, we summarize the relevant facts below as favorably to the plaintiffs as the record allows. See Ricci v. DeStefano, 557 U.S. 557, 586 (2009).

On the afternoon of June 1, 2008, St. Louis Metropolitan Police Department Lieutenant Donnell Tanksley was driving west on Natural Bridge Road in St. Louis in an unmarked police car when he saw a group of motorcycles, also traveling west. In later deposition testimony, Tanksley said that one of the motorcycles, yellow in color, was weaving in and out of the bicycle lane. Tanksley turned on his siren, and in response, the yellow motorcycle pulled into the parking lot of a Shell gas station at the corner of Natural Bridge Road and Marcus Avenue. Tanksley followed the motorcycle into the gas station, but as he picked up his microphone to notify the police dispatcher of the stop, the motorcycle sped off back onto Natural Bridge, this time traveling east. Tanksley testified that he told the police dispatcher that he had tried to pull over a yellow motorcycle for careless and reckless driving, but that it had driven away. A short period of time thereafter – variously described by Tanksley as "a few seconds" or "a minute or two, or maybe moments later" – Tanksley proceeded to drive back onto Natural Bridge heading east, and came upon an accident between a yellow motorcycle and a white car at the intersection of Natural Bridge Road and Paris Avenue. The driver of the motorcycle was Robert Jason Johnson. Tanksley testified that he believed the yellow motorcycle involved in the accident was the same one he had pulled over earlier.

Tanksley testified that he contacted the police dispatcher to report the accident and requested the police department's Accident Reconstruction Unit. A number of other officers arrived at the scene, including Officer Matthew Waggoner. Waggoner talked to Tanksley as well as the driver of the white car, Bryant Howard, and his front passenger, Yolanda Diggs, and prepared an accident report with narrative statements

from Tanksley, Howard, and Diggs, and a sketch of the accident scene.[3] Photographs were also taken of the scene. The accident report notes that Johnson's speed and improper lane usage were "probable contributing circumstances" of the accident, and states that Johnson would be subject to charges for "Improper Lane Usage" and "Reckless Driving by Other." Johnson had been taken to a hospital and was unable to give a statement to Waggoner due to his injuries. He died later that day.

The narrative statement taken from Tanksley and included in the accident report describes his earlier pursuit of the yellow motorcycle, and is in its essentials consistent with the account given above. It specifically notes that Tanksley had told the police dispatcher that the yellow motorcycle had been engaging in careless and reckless driving. Also in the report is Howard's statement that he was traveling east on Natural Bridge Road and in the process of making a right turn onto Paris Avenue, when he saw the motorcycle enter the intersection from the west, driving in the bicycle lane. He said that the motorcycle clipped his front bumper, deflected off, and flipped several times. The motorcycle driver's body hit a utility pole on the side of the street and was knocked off the motorcycle, landing in the street. Diggs's statement in the report is substantially identical to Howard's. Waggoner's supervisor, Sergeant[4] Perri Johnson, spoke to both Waggoner and Tanksley before the report was complete and he later reviewed the report and signed off on it as the reviewing officer.

---

[3]The estate claims the record is inconsistent as to whether Waggoner did, in fact, prepare the accident report on his own, or whether Tanksley helped. The record shows no such inconsistency. Waggoner is listed on the report as the "reporting officer," but testified in deposition that Tanksley assisted him in preparing the report. In his responses to requests for admission, Tanksley admitted in part and denied in part that he assisted Waggoner in preparing the report, stating that he gave a statement to Waggoner and directed him to include it in the report, but that he did not assist Waggoner in *drafting* the report.

[4]Perri Johnson has since been promoted to Lieutenant.

In later deposition testimony, both Howard and Diggs said that the statements attributed to them in the accident report were accurate. Both additionally corroborated aspects of Tanksley's story: they said that before the accident, while eastbound on Natural Bridge Road, they had seen a yellow motorcycle traveling west, followed by a car. After the yellow motorcycle popped a wheelie, the car tailing the motorcycle turned on a siren and the yellow motorcycle pulled over at a Shell gas station. Howard testified that the yellow motorcycle he saw pulling into the Shell gas station was the same one later involved in the accident, and that just before the accident the motorcycle was driving fast in the bicycle lane.

In the end, no accident reconstruction was performed. Officer Brian Waltman of the Accident Reconstruction Unit did visit Johnson at the hospital to determine his condition. He told the traffic sergeant that Johnson was in critical-unstable condition, but alive. The traffic sergeant later decided that the Accident Reconstruction Unit would not be investigating the accident.

Johnson had $25,000 in life insurance and $25,000 in accidental death and dismemberment coverage. The insurance company, relying primarily on the accident report, determined that the accidental death benefits were not payable. In its view, the accident report showed that Johnson had been driving in a careless and reckless manner in violation of Missouri law, which requires that vehicles be operated in a "careful and prudent manner," see Mo. Rev. Stat. § 304.012, and had thereby triggered the policy's crime exclusion.

In 2009, Johnson's minor children and estate brought a wrongful death suit in Missouri state court against Bryant Howard. After a trial in which Howard, Diggs, and Tanksley testified live and portions of Waggoner's deposition testimony were read, a jury found in favor of Howard.

This federal lawsuit followed in 2013. As relevant to this appeal, the estate sued Tanksley, Waggoner, and Perri Johnson under 42 U.S.C. § 1983 for violating its rights to substantive due process and equal protection under the Fourteenth Amendment and for engaging in a conspiracy arising out of these constitutional violations. During the course of the case, the district court denied a motion for sanctions against Howard and Diggs for attempting to reschedule their depositions shortly before they were to take place and then not showing up. Final judgment was entered after the district court granted the defendants' motion for summary judgment on all claims. The estate appeals the grant of summary judgment and the denial of the motion for sanctions.

II

We review the district court's grant of summary judgment de novo. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is precluded when there are "specific facts showing that there is a genuine issue for trial." Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The estate's substantive due process claim is argued on two bases: first, that the defendants falsified the accident report, and second, that they failed to perform an adequate investigation of the accident. With respect to the first basis, the estate argues that the defendant police officers falsified the accident report, and that the false information in the report caused the denial of their insurance claim, the loss of their wrongful death lawsuit, and the denial of meaningful access to the courts. The linchpin of each of these theories is that the defendant police officers prepared an accident report that falsely placed blame on Johnson for the accident.

The estate, however, fails to adduce facts that, if included in (or excluded from) the report, might realistically have exculpated Johnson in the eyes of an insurance company or a jury. Instead, the following examples illustrate the nature of the estate's complaints:

- A map Waggoner drew and included with the accident report does not depict a parking lane for vehicles on the eastbound side of Natural Bridge Avenue.
- Boxes are checked on the accident report indicating that Johnson's excessive speed and improper lane usage were "probable contributing circumstances" to the accident, though the narrative statements in the report from Howard and Diggs do not mention that the motorcycle was speeding.
- Tanksley was listed in the "Witnesses" section of the accident report, though the Missouri Uniform Accident Preparation Manual states that the section should include "persons witnessing accident," and Tanksley was not at the scene when the accident took place.[5]

Minor discrepancies of this sort, standing alone, do not constitute evidence sufficient to permit a conclusion that the accident report was false in any material way. See Torgerson, 643 F.3d at 1042 (on summary judgment "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts'" (quoting Matsushita, 475 U.S. at 586)); Wilson v. City of Des Moines, 293 F.3d 447, 451 (8th Cir. 2002) ("We will not discuss the disputes concerning what information the officers heard broadcast over the police radio, the verbal warnings that the officers received when they arrived at the scene, and who provided these warnings. It seems likely that these discrepancies are minor and immaterial."); Askew v. City of Chicago, 440 F.3d 894, 896 (7th Cir. 2006) ("The sort of inconsistencies to which [the plaintiffs] point[] are normal. Eyewitnesses remember things differently. Police

---

[5]We note that the manual does not specify that persons witnessing the accident are the *only* persons who should be included in the Witnesses section.

don't always follow correct procedure . . . . If these were sufficient to permit second-guessing and damages, then the job of policing would be very risky financially as well as physically."). The estate offers no argument as to how these purported discrepancies rendered the accident report materially false, and we see nothing in the record that would permit a rational jury to reach that conclusion.

As a result, we need not decide whether there could ever be a successful due process claim based on a false police report that causes the denial of an insurance claim for accidental death benefits or the loss of a civil suit. The Third Circuit, in a non-precedential decision, has held that there is no constitutionally-protected property interest in a full vehicular insurance settlement, Jarrett v. Town of Bensalem, 312 F. App'x 505, 507–08 (3d Cir. 2009) (unpublished), but the Ninth Circuit has held that "the deprivation of *pension* or *disability* benefits amounts to the deprivation of constitutionally protected property," Portman v. Cty. of Santa Clara, 995 F.2d 898, 905–07 (9th Cir. 1993). See also Russell v. Dunston, 896 F.2d 664, 668 (2d Cir. 1990) ("The entitlement to disability retirement is a constitutionally protected property interest for purposes of Section 1983."); Gray Panthers v. Schweiker, 652 F.2d 146, 148 n.2 (D.C. Cir. 1980) (noting that parties agreed that "claimants' interest in receiving the medical insurance benefits for which they have paid a monthly premium is a property interest" protected by the Due Process Clause). Whether the denial of the accidental death insurance claim and the failure of the wrongful death suit at issue here implicate constitutionally-protected property rights "must be decided by reference to state law," which the parties have not briefed and which, in light of our conclusions above, we have no need to address. Bishop v. Wood, 426 U.S. 341, 344 (1976). Still less do we need to address whether any such property right is a fundamental right protected by substantive due process. See Flowers v. City of Minneapolis, 478 F.3d 869, 872–73 (8th Cir. 2007).

The same is true for the estate's claim that it was deprived of meaningful access to the courts during the course of the wrongful death suit because the defendants

prepared a false accident report.  Though we find the legal theory behind this claim dubious in the first instance, as it is based solely on dissatisfaction with the evidence presented by the other side, we need not pursue the issue to its conclusion.  The evidence, even when taken in the light most favorable to the estate, is insufficient to establish the factual premise underlying the theory – that the accident report was materially false.

We next turn to whether the defendants violated the Due Process Clause by failing to adequately investigate the accident.  To succeed on this basis, the estate must show that the defendants "intentionally or recklessly failed to investigate, thereby shocking the conscience."  Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009) (quoting Amrine v. Brooks, 522 F.3d 823, 834 (8th Cir. 2008)).  The estate points to the fact that the defendant police officers didn't interview any witnesses besides Tanksley, Howard, and Diggs, perform any measurements of the accident scene, preserve physical evidence, or perform accident reconstruction.  But there is no evidence that there *were* any additional witnesses that the defendants failed to interview, or any physical evidence that they failed to preserve.  Nor is there any indication that the defendant police officers were required by department policy or law to take measurements of the accident scene or perform accident reconstruction: on the contrary, in cases where death has occurred or is imminent, the police department's written procedures for handling accidents require merely that the handling officer "advise the dispatcher of the circumstances of the accident," and place on the dispatcher the responsibility for contacting the Accident Reconstruction Unit.  Moreover, it is undisputed that the defendant police officers were not trained in accident reconstruction, and were not in a position to perform accident reconstruction themselves.  Finally, the estate offered no evidence that the defendants were responsible for making the decision not to perform accident reconstruction; the only evidence relevant to this issue is that Tanksley requested that the Accident Reconstruction Unit be sent to the scene.

Because the record contains no evidence that the defendants materially falsified the accident report or failed to conduct a constitutionally-required investigation, the district court properly granted summary judgment to the defendants on the substantive due process claim.

Our conclusion that the accident report was not materially false is also sufficient to dispose of the estate's claims for violation of the Equal Protection Clause and conspiracy to violate civil rights. The equal protection claim is based on allegations that Tanksley and Perri Johnson tried to falsely implicate Robert Jason Johnson because he was white and they are African American. According to the estate, the fact that Waggoner, a white officer, prepared the accident report even though he wasn't the first officer at the scene permits an inference that Tanksley ordered him to write the report in order to mask the fact that police were scapegoating Johnson because of his race. This claim – frivolous in its own right on the facts of this case – obviously cannot succeed given our conclusion that there is no evidence that the accident report was materially false. The same is true of the claim that the defendants conspired to deprive Johnson of his civil rights: to be liable for civil conspiracy, the defendants must have committed some other underlying constitutional violation, Novotny v. Tripp Cty., 664 F.3d 1173, 1180 (8th Cir. 2011), and the estate has failed to show one. We therefore affirm the grant of summary judgment on the equal protection and conspiracy claims as well.

Finally the estate asserts the district court erred in denying its motion for sanctions against Howard and Diggs for attempting to reschedule their depositions on the morning the depositions were scheduled to take place, and then not attending. On July 26, 2014, about two and a half years after the estate lost the wrongful death suit and approximately a year after this one was filed, the estate served subpoenas on Howard and Diggs, scheduling their depositions for the afternoon of August 22, 2014.

According to written briefs and in-court argument[6] by Howard and Diggs, Howard contacted his attorneys from the state court wrongful death case about the subpoenas the morning of August 22, concerned that he was being sued. One of his attorneys emailed counsel for the estate that morning, seeking to reschedule the depositions. Counsel for the estate refused, went forward with the depositions that afternoon, and noted on the record that Howard and Diggs had failed to show up. The estate then moved for costs and sanctions, demanding $104.50 in costs arising out of Howard's and Diggs's non-appearance, and $1,900 in attorney's fees. It also asked the district court to hold Howard and Diggs in contempt. In response, Howard and Diggs argued that the estate's counsel was at fault for not contacting the lawyers from the wrongful death case about the depositions. (The estate was represented by the same attorneys in the state case as well, so its attorneys knew the lawyers who represented Howard and Diggs at the hearing.)

The district court held a hearing and orally denied the motion. Initially, the court said the conflict "sounds like a wash to me," recognizing that each side had a potential complaint against the other over the scheduling dispute. When Howard's lawyer said, "We offered to produce [Howard] and [Diggs] at agreeable times," the district court responded:

> Let's do that. Hey, as that great California philosopher Rodney King said, "Can't we all just get along, please?" And there is a greater principle of the law: it's called aggravation of the court. Don't come in here with this little stuff worrying me. You are all officers of the court. Rodney King, who maybe he graduated from high school, maybe he

---

[6]Howard and Diggs argue that the transcript of the hearing should not be considered because it was not included in the joint appendix. But "[p]arts of the record may be relied on by the court or the parties even though not included in the appendix," Fed. R. App. P. 30(a)(2), and the transcript is part of the record, available as document 144 in the district court's docket.

didn't, he had enough sense to know that about getting along, working things out. You all got to do this.

So I'm denying this motion. That's a wash. [Howard and Diggs] didn't tell [their attorneys], [the estate's counsel] didn't notify [Howard's attorneys] . . . . You all work out a date.

We review the district court's denial of a motion for sanctions for abuse of discretion. Gallagher v. Magner, 619 F.3d 823, 844 (8th Cir. 2010). The district court viewed both parties partially at fault, and considered the dispute to be a scheduling matter better resolved by the parties themselves than by the court. We believe these to be reasonable conclusions for the district court to draw based on the events recounted above, and the court did not abuse its discretion in denying the motion for sanctions.

III

The judgment of the district court is affirmed.

_____