# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-2664
_____

Susan R. Parks, wife and next of kin of Timothy Glen Parks, deceased, and
Executor of the Estate of Timothy Glen Parks, deceased

*Plaintiff - Appellant*

v.

Ariens Company, a Wisconsin Corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: February 11, 2016
Filed: July 14, 2016

_____

Before SHEPHERD, BEAM, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

This negligence case requires us to decide whether a product manufacturer can satisfy its duty to a purchaser by making available an optional safety feature that

would have prevented the accident that gave rise to the suit. We agree with the district court[1] that it can, and that the defendant in this case did. We therefore affirm.[2]

I

Timothy Parks died from asphyxiation after the Gravely Promaster 152Z riding mower he was operating on his property fell off the edge of an embankment and rolled over on top of him.[3] His wife, Susan Parks (Parks) brought this suit alleging, as relevant to this appeal, that the manufacturer of the 152Z, Ariens Company, was negligent for failing to equip the machine with a rollover protection system (ROPS).

At the time the 152Z in question was sold, the ROPS was an optional safety feature that consisted of a roll bar and seat belt; Ariens recommends its use for "slope operation." The 152Z had initially been sold without a ROPS to an Ariens dealer called Robertson Implement; Rick Robertson, the owner of the dealership, said he declined the option of a ROPS because he preferred to leave the choice to his customers. Robertson then sold the 152Z to a man named Coby Camerer, who declined to buy the optional feature after discussing its availability with Robertson. Camerer used the mower for eleven months before trading it back in to Robertson and purchasing a different model.

A month later, in June 2006, Timothy Parks bought the 152Z previously owned by Camerer. When deposed after the accident, Robertson remembered discussing

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

[2]We have jurisdiction pursuant to 28 U.S.C. § 1291.

[3]Because this appeal comes to us from a grant of summary judgment against Parks, we summarize the facts as favorably to her as the record allows. See A.J. ex rel. Dixon v. Tanksley, 822 F.3d 437, 439 (8th Cir. 2016).

with Timothy Parks the handling of the mower and the terrain on which he planned to operate it, but couldn't recall whether he went over the availability and safety features of the ROPS. He was able to state, however, that his standard practice was to discuss the availability and safety features of the ROPS with each of his customers, and he had no reason to believe he deviated from that practice when he sold the 152Z to Timothy Parks. He also stated that his practice was to go over an Equipment Safety Check form with each customer and have the customer sign it; among the questions listed on the form are "Rollover protection system in place?" and "Rollover protection system rejected by customer?" The form was provided to Robertson by his insurance company, and he believed his insurance company required him to use it. Again, the record does not confirm whether Robertson went over the Equipment Safety Check form with Timothy Parks or how he answered – the forms from 2006 were thrown out in 2010 or 2011 – but there is no evidence to suggest that Robertson didn't follow his usual practice of going over the checklist with Timothy Parks.

In June 2013, approximately seven years after purchasing the 152Z, Timothy Parks suffered the accident that resulted in his death. After his wife filed this suit, the district court granted summary judgment against her, holding that Ariens had satisfied any duty it owed Timothy Parks by offering the ROPS as an optional feature. Parks appeals, contending that Ariens was negligent for not including the ROPS with every 152Z it sold.

## II

The doctrine that a manufacturer is, under certain circumstances, not negligent if a purchaser fails to buy optional safety equipment that would have prevented the accident originated with the New York intermediate appellate court decision in Biss v. Tenneco, Inc., 409 N.Y.S.2d 874 (N.Y. App. Div. 1978). That court, faced with a claim that a product sold without a ROPS was thereby defective, held that the manufacturer had not breached any duty it owed to the plaintiff because it had made

the ROPS available as an optional feature and the plaintiff was "the party in the best position to exercise an intelligent judgment to make the trade-off between cost and function." Id. at 877. The following year we stated that "we accept [the Biss] theory as basically sound," Wagner v. Int'l Harvester Co., 611 F.2d 224, 231 (8th Cir. 1979) (applying Minnesota law), and since then a variety of courts have followed some variation of this "optional equipment doctrine," see, e.g., Austin v. Clark Equipment Co., 48 F.3d 833, 837 (4th Cir. 1995) (applying Virginia law); Scallan v. Duriron Co., 11 F.3d 1249, 1254 (5th Cir. 1994) (applying Louisiana law), superseded by statute as recognized in Perez v. Michael Weinig, Inc., No. Civ. A. 304CV0448, 2005 WL 1630018, at *4–*6 (W.D. La. Jul. 7, 2005); Morrison v. Kubota Tractor Corp., 891 S.W.2d 422, 428–29 (Mo. Ct. App. 1994); Butler v. Navistar Int'l Transp. Corp., 809 F. Supp. 1202, 1209 (W.D. Va. 1991) (applying Virginia law); Anderson v. P.A. Radocy & Sons, Inc., 865 F. Supp. 522, 531 (N.D. Ind. 1994) (applying Indiana law); Davis v. Caterpillar Tractor Co., 719 P.2d 324, 326–27 (Colo. Ct. App. 1985).

Although courts differ in how they articulate the requirements for applying the optional equipment doctrine, the New York Court of Appeals's decision in Scarangella v. Thomas Built Buses, Inc. provides a typical formulation:

> The product is not defective where the evidence and reasonable inferences therefrom show that: (1) the buyer is thoroughly knowledgeable regarding the product and its use and is actually aware that the safety feature is available; (2) there exist normal circumstances of use in which the product is not unreasonably dangerous without the optional equipment; and (3) the buyer is in a position, given the range of uses of the product, to balance the benefits and the risks of not having the safety device in the specifically contemplated circumstances of *the buyer's* use of the product. In such a case, the buyer, not the manufacturer, is in the superior position to make the risk-utility assessment, and a well-considered decision by the buyer to dispense with the optional safety equipment will excuse the manufacturer from liability.

717 N.E.2d 679, 683 (N.Y. 1999). As Scarangella recognizes, under many circumstances a product will be capable of multiple uses, some of which are reasonably safe even without the optional equipment. And oftentimes the buyer will be in a better position than the manufacturer to know whether the machine will be put to such a use. In such situations, it makes sense to give the buyer the option of foregoing the add-on without subjecting the manufacturer to negligence liability, as long as it can be determined that the buyer made an informed choice.

Because this case is governed by Iowa law, we are obliged to follow any on-point decisions by the Iowa Supreme Court. See Leonard v. Dorsey & Whitney, LLP, 553 F.3d 609, 612 (8th Cir. 2009). Absent any such decisions, "we must determine what that court would probably hold if it were called upon to decide the issue," looking to "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue." Missouri v. City of Glasgow, 152 F.3d 802, 805–06 (8th Cir. 1998) (citation omitted).

The Iowa Supreme Court has not yet considered the optional equipment doctrine, but both the policy reasons we recognized in Wagner and the popularity of the optional equipment doctrine lead us to conclude that the court would adopt it.[4] Parks nonetheless advances a number of reasons why she believes it would not. First, she notes that the doctrine is not listed among the statutory defenses to product liability claims. See Iowa Code § 668.12. True, but the optional equipment doctrine is not an affirmative defense to negligence. Rather, the doctrine is a means for determining when the manufacturer has fulfilled its duty to the buyer.

---

[4]Because we conclude that there was no negligence here under Scarangella's articulation of the doctrine, we need not consider whether Iowa would adopt a broader formulation of the test that lacks some of its requirements.

Second, she suggests that the optional equipment doctrine is equivalent to "assumption of the risk," a traditional negligence defense, which she says was abolished by the Iowa Supreme Court in Coker v. Abell-Howe Co., 491 N.W.2d 143, 148 (Iowa 1992). What Coker abolished, however, was what it called the "secondary meaning" of assumption of risk, namely "an affirmative defense" that contends "that the plaintiff acted unreasonably in encountering a known risk." Coker, 491 N.W.2d at 146–47. It left untouched the "primary meaning," under which "assumption of risk is an expression for the proposition that the defendant was not negligent." Id. at 146. The optional equipment doctrine is akin to the primary meaning, not the now-abolished secondary meaning, because it is not an affirmative defense and involves no claim that the plaintiff acted unreasonably. It simply reflects a determination that a defendant may sometimes satisfy its duty by informing buyers that an optional feature is available and necessary in order to make the product reasonably safe for certain uses.

Third, she argues that the doctrine is inconsistent with Iowa's rule that a manufacturer has "a *non-delegable* duty to make a machine that includes necessary safety devices." Garnes v. Gulf & Western Mfg. Co., 789 F.2d 637, 641 (8th Cir. 1986) (emphasis added) (applying Iowa law). The optional equipment doctrine, however, does not represent a delegation of the duty to make a reasonably safe product; it is a recognition that a product may be reasonably safe for certain uses without the optional equipment.

Finally, she argues that the optional equipment doctrine is inconsistent with section 2(b) of the Restatement (Third) of Torts: Product Liability, which the Iowa Supreme Court adopted in Wright v. Brooke Group Ltd., 652 N.W.2d 159, 169 (Iowa 2002). That section states that "[a] product is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design . . . and the omission of the alternative design renders the product not reasonably safe." Nothing in this section conflicts with

the Scarangella formulation of the optional equipment doctrine, which only applies if the omission of the alternative design results in a product that is still reasonably safe for certain uses.

Parks also suggests that Iowa might adopt a narrower version of the optional equipment doctrine endorsed several decades ago by the Minnesota Supreme Court (and hinted at even earlier by the New Jersey Supreme Court), which requires not only that the product have multiple uses, but that the optional equipment *impair* some of those uses, before the seller can leave it up to the buyer whether or not to purchase the optional equipment. See Bilotta v. Kelley Co., 346 N.W.2d 616, 624–25 (Minn. 1984); see also Bexiga v. Havir Mfg. Corp., 290 A.2d 281, 284–85 (N.J. 1972). We doubt the Iowa Supreme Court would adopt this approach, which has failed to gain widespread acceptance in the decades since it was first articulated, because it would effectively force even a buyer who knows she has no use for the optional equipment to buy it anyway. The Minnesota Supreme Court in Bilotta warned that if its more limited version of the optional equipment doctrine were not adopted, manufacturers would sell "stripped down" versions of their products. See id. But it is difficult to see how this would be problematic if the "stripped down" product was, in fact, reasonably safe for the use to which it would be put by some buyers.

We next consider whether the requirements of the optional equipment doctrine as we have stated them apply in this case. With respect to the first Scarangella factor – whether Timothy Parks was actually thoroughly knowledgeable regarding the 152Z and its use and was actually aware that the ROPS was available – undisputed facts show that Robertson and Timothy Parks discussed the terrain on which the latter would be operating the mower. Although Robertson couldn't remember whether he offered to sell Timothy Parks a ROPS at the time he bought the lawn tractor, his standard practice was to discuss the availability of a ROPS with each customer and the situations where its use was recommended. The district court thought there was a dispute of material fact as to whether Robertson informed Timothy Parks about the

ROPS before he purchased the mower, but Robertson's testimony that his standard practice was to tell customers about ROPS – while perhaps not as definitive as a specific recollection of the sale to Timothy Parks – suggests that he did. So does Robertson's practice (which he believed was compelled by his insurance company) of having his customers sign an Equipment Safety Check form, which included a specific question about whether the buyer had declined the ROPS. Parks introduced no countervailing evidence from which a jury could find that Robertson did not fully inform Timothy Parks about the ROPS, such as instances where Robertson failed to follow what he called his standard practice with other buyers. See Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (on summary judgment "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts'" (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (2011))). The first requirement of the Scarangella test is therefore met.

With respect to the second requirement of the Scarangella test – that there are normal circumstances of use in which the 152Z is not unreasonably dangerous without the ROPS – Parks contends that the 152Z has only a single use, cutting grass, which is unreasonably dangerous without the ROPS. But the 152Z can be used to cut grass on level ground, or on slopes, and there is no dispute that it is reasonably safe without the ROPS when used on level ground. Parks responds that while the 152Z may be reasonably safe on level ground, every 152Z is, at some point in its life, transported – and in the process must be loaded and unloaded on trailers using a ramp. She has not, however, presented evidence showing that occasional transportation on ramps renders unsafe a 152Z that is otherwise used exclusively on flat ground. A reasonable jury, in order to conclude that a 152Z used in such a way is not reasonably safe, would at minimum need evidence showing how often 152Zs are transported on ramps, but Parks points to no such evidence in the record. We thus conclude that there are normal circumstances of use in which the 152Z is not unreasonably dangerous without the ROPS.

Finally, Timothy Parks was in a position to balance the benefits and the risks of not having a ROPS for purposes of his planned use of the 152Z. Certainly he was in a better position to evaluate the need for a ROPS than Ariens, as he knew the layout of his own property and the portions which he planned to mow. We thus conclude that the third requirement of the Scarangella test is also met here.

Based on the undisputed facts, Ariens fulfilled any duty it had to Timothy Parks when it provided the ROPS as an optional feature for the 152Z mower and ensured that he had the information necessary to make an informed choice.

Affirmed.

_____