

FILED

Jun 17 2019, 12:08 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 18S-CT-451

## Angela Brewer, Individually and as Personal Representative of the Estate of Rickey A. Brewer, Deceased,

*Appellant (Plaintiff)*

–v–

## PACCAR, Inc. d/b/a Peterbilt Motors Co.,

*Appellee (Defendant)*

---

Argued: October 25, 2018 | Decided: June 17, 2019

Appeal from the Morgan Circuit Court
No. 55C01-1605-CT-691
The Honorable Matthew G. Hanson, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 55A05-1709-CT-2168

---

**Opinion by Chief Justice Rush**

Justices David, Massa, Slaughter, and Goff concur.

**Rush, Chief Justice.**

In Indiana, when an individual is injured by a defectively designed product, the Indiana Product Liability Act (IPLA) provides a basis for relief. The injured party may bring a defective-design claim against the manufacturers of a component part, as well as of the final product.

Today we address a narrow question regarding an IPLA design-defect claim: when does a component-part manufacturer owe no duty, as a matter of law, to install safety features that an injured party alleges are necessary?

PACCAR is the manufacturer of a "glider kit," a component part that becomes an operable over-the-road semi-truck after a purchaser installs an engine, transmission, and exhaust system. The glider kit has a forty-foot blind spot behind it; and it is PACCAR's standard practice not to include certain safety features to mitigate that danger, unless a customer specifically requests them.

Here, a driver backed up a semi with an integrated PACCAR glider kit and struck and killed construction foreman Rickey Brewer. His widow asserted a design-defect claim against PACCAR, alleging that the lack of certain safety features rendered the glider kit defective. PACCAR argued that it was entitled to summary judgment because it owed no duty, as a matter of law, to install those safety features—because this duty fell solely on the final manufacturer of the completed semi.

Under these circumstances, PACCAR, as the component-part manufacturer, is not entitled to summary judgment. Its glider kit was not going to be incorporated into an end product that had multiple anticipated configurations. Rather, the component part had one reasonably foreseeable use: to be integrated into an operable over-the-road semi. Thus, PACCAR had to make one of two showings to be relieved of a duty, as a matter of law, to include the allegedly necessary safety features. It made neither.

PACCAR did not show that the final manufacturer was offered, and declined, the allegedly necessary safety features or that the integrated

glider kit can be used safely without them. Thus, whether PACCAR owed Brewer a duty to include the features is a question for the trier of fact.

Finally, while PACCAR may assert a sophisticated-user defense against the design-defect claim, the merits of that defense are likewise a question for the trier of fact. We accordingly reverse the trial court's grant of summary judgment for PACCAR.

## Facts and Procedural History

PACCAR manufactures vehicles and parts that W&W Transport uses to conduct its trucking operations. One PACCAR product that W&W purchases is a glider kit—the body and frame of a semi-truck. W&W purchases glider kits, as opposed to new vehicles, so that it can install its preferred engines, producing more fuel-efficient semis that are easier to maintain.

In 2015, W&W bought a PACCAR sleeper-cab glider kit, and installed an engine, transmission, and exhaust system, rendering the glider kit an operable over-the-road semi-truck.

The glider kit created a forty-foot blind spot directly behind the semi. But PACCAR did not include certain safety features—such as a rear-view window, a backup alarm, a backup camera, or backup flashers—to alleviate the dangers associated with the blind spot when the semi is reversed. And PACCAR and W&W disagree about whether PACCAR offered these features as options.

The following year, W&W employee Raymond Miller was backing up the completed semi at a construction site. He felt a nudge, which is normally "nothing unusual." But he was immediately alerted by a man pounding on his window, urging him to pull forward. Construction foreman Rickey Brewer had been pinned between the back of the truck and a trailer and died from his injuries.

Rickey's widow, Angela Brewer, filed a wrongful-death lawsuit against PACCAR. She asserted, in part, a defective-design claim under the IPLA,[1] alleging that PACCAR's glider kit was unreasonably dangerous and defective because it lacked certain safety features and warnings relating to the blind spot.

PACCAR moved for summary judgment, arguing that it had no duty, as a matter of law, to install those safety features. To that end, PACCAR argued that it did not manufacture the completed semi and that the glider kit was not defective or unreasonably dangerous when it left PACCAR's control. In support, PACCAR included two affidavits from one of its engineers, who stated that safety features were options for buyers to order, and that PACCAR built the glider kit to W&W's design specifications.

In response, Brewer argued that summary judgment was inappropriate. She reasoned that there was evidence the glider kit was defective under the IPLA because it lacked a rear-view window, a backup alarm, a backup camera, backup flashers, and warnings relating to the blind spot. In support, she designated evidence including testimony and a report prepared by an expert in auto-safety design. The expert opined that the glider kit was defectively designed and unreasonably dangerous because it lacked adequate backup safety devices as standard installations.[2]

The trial court held a hearing on both PACCAR's motion for summary judgment and Brewer's later cross-motion for partial summary judgment. Brewer argued in her cross-motion that under the IPLA, PACCAR owed a

---

[1] Brewer also filed suit against W&W, Miller, and Indianapolis Power & Light—the latter owned the site where the accident took place. Brewer settled with W&W and Miller, and IPL prevailed on its unopposed motion for summary judgment, leaving PACCAR the only remaining defendant.

[2] Although it appears that the auto-design expert analyzed the completed semi involved in the accident, the alleged safety defects relate specifically to the glider kit's design and its lack of certain safety features.

duty to Rickey as a bystander. The court granted PACCAR's motion for summary judgment and denied Brewer's cross-motion. Brewer appealed.

The Court of Appeals reversed. It first held that summary judgment in PACCAR's favor was improper because "it should be a question of fact as to whether it was reasonable for PACCAR to put a product into the stream of commerce that lacked one or several" safety features. *Brewer v. PACCAR, Inc.*, 98 N.E.3d 83, 93 (Ind. Ct. App.), *aff'd on reh'g*, 104 N.E.3d 625 (Ind. Ct. App. 2018). It then addressed Brewer's cross-motion for partial summary judgment, explaining "there should be no dispute that the IPLA applies to [Brewer's] claims against PACCAR." *Id.* at 97.

PACCAR petitioned to transfer, which we granted, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).[3]

## Standard of Review

We review summary judgment de novo, drawing all reasonable inferences in Brewer's favor. *See Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016). The standard is the same on appeal as it is for the trial court: summary judgment is appropriate only when the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

## Discussion and Decision

The IPLA subjects a manufacturer of "a product or a **component part of a product**," Ind. Code § 34-6-2-77 (2018) (emphasis added), to liability for physical harm caused by a manufacturer placing "into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer," I.C. § 34-20-2-1. *See also* I.C. § 34-20-1-1. A

---

[3] We summarily affirm the portion of the Court of Appeals opinion that addresses whether the IPLA applies to Brewer's claims against PACCAR. *See* App. R. 58(A)(2).

product may be defective under the IPLA if it is defectively designed, if it has a manufacturing flaw, or if it lacks adequate warnings about dangers associated with its use. *See* I.C. §§ 34-20-4-1, -2; *see also, e.g., Campbell Hausfeld/Scott Fetzer Co. v. Johnson*, 109 N.E.3d 953, 956 (Ind. 2018).

Here, Brewer's IPLA claim asserts that PACCAR's glider kit was defectively designed because it lacked certain safety features to reduce the danger inherent in its forty-foot blind spot. Because a design-defect claim is based in negligence, Brewer must establish that (1) PACCAR owed a duty to Rickey; (2) PACCAR breached that duty; and (3) the breach proximately caused an injury to Rickey. *See* I.C. § 34-20-2-2; *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007). The only element at issue today is duty—whether PACCAR lacked a duty, as a matter of law, to install certain safety features. *See Kennedy v. Guess, Inc.*, 806 N.E.2d 776, 783 (Ind. 2004).

PACCAR acknowledges that component-part manufacturers may be liable for negligence under the IPLA—but it asserts that summary judgment is appropriate here because it had no duty, as a matter of law, to include the safety features that Brewer alleges were necessary. Brewer counters that summary judgment in PACCAR's favor is improper because the designated evidence shows the glider kit was defective when it left PACCAR's control—given PACCAR's failure to include certain safety features.

Indiana caselaw on this issue—when a component-part manufacturer has a duty under the IPLA to include safety features—is sparse. But it has established that, under the IPLA, component-part manufacturers may have no duty, as a matter of law, to install safety features when the component part can be put to a variety of uses that prevent the component manufacturer from reasonably knowing whether and how safety features should be included. *See Shanks v. A.F.E. Indus.*, 275 Ind. 241, 249–50, 416 N.E.2d 833, 838 (1981); *Del Signore v. Asphalt Drum Mixers*, 182 F. Supp. 2d 730, 745–46 (N.D. Ind. 2002) (applying Indiana law). In those cases, the duty to install safety features, if it exists at all, falls on the final manufacturer and not the component-part manufacturer. *See Shanks*, 275 Ind. at 250–51, 416 N.E.2d at 838; *Del Signore*, 182 F. Supp. 2d at 745–46.

But here, PACCAR's glider kit is a component with only one reasonably foreseeable use: to be integrated into an operable over-the-road semi-truck. And Brewer has alleged that the lack of certain safety features rendered the component part defective for this use. This Court has not yet addressed whether, under these circumstances, a component-part manufacturer has no duty, as a matter of law, to install features necessary for safe use of the end product.

Today we hold that, under the IPLA, a manufacturer who produces a component part with only one reasonably foreseeable use has no duty, as a matter of law, to install safety features if: (1) the final manufacturer was offered the safety features and declined them; or (2) the component part, once integrated, can be used safely without those safety features.

Because PACCAR has failed to establish the absence of a genuine issue of material fact for either condition, it is not entitled to summary judgment.[4] But, as we explain in more detail below, PACCAR may assert a sophisticated-user defense for the trier of fact to consider.

## I. In Indiana, component-part manufacturers may have a duty to include safety features under certain circumstances.

The IPLA establishes when a product is defective, including in design. Indiana Code section 34-20-4-1 provides,

---

[4] Brewer also asserted a failure-to-warn claim. Because the trial court granted summary judgment in PACCAR's favor "on all claims asserted against PACCAR," its order applied to both the design-defect claim and the failure-to-warn claim. For two reasons, we also reverse summary judgment on the failure-to-warn claim. First, to the extent any duty PACCAR has to warn overlaps with a duty to include certain safety features, the inappropriateness of summary judgment on the design-defect claim makes summary judgment also inappropriate on the failure-to-warn claim. *See Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107 (3d Cir. 1992). Second, to the extent any duty to warn is distinct from a design-defect duty, PACCAR failed to develop a separate argument for the failure-to-warn claim. *See* T.R. 56(C); *Siner*, 51 N.E.3d at 1187; *Kennedy*, 806 N.E.2d at 782.

A product is in a defective condition . . . if, at the time it is conveyed by the seller to another party, it is in a condition:

(1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and

(2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption.

The IPLA does not differentiate between a final manufacturer and a component-part manufacturer. *See TRW Vehicle Safety Sys. v. Moore*, 936 N.E.2d 201, 215 (Ind. 2010). Both are "manufacturers" for purposes of the IPLA, *see* I.C. § 34-6-2-77, and so both have a duty "to design . . . products which are reasonably fit and safe for the purpose for which they are intended," *Guerrero v. Allison Engine Co.*, 725 N.E.2d 479, 482 (Ind. Ct. App. 2000) (quoting *Liberty Mut. Ins. v. Rich Ladder Co.*, 441 N.E.2d 996, 999 (Ind. Ct. App. 1982)).

PACCAR acknowledges this general duty imposed by the IPLA on component-part manufacturers. But PACCAR contends that it had no duty, as a matter of law, to install certain safety features because that duty fell on the final manufacturer alone.

We recognize that when a component part is integrated into an end product that has multiple anticipated configurations, a component-part manufacturer may have no duty, as a matter of law, to install safety features. But those are not the circumstances here. The designated evidence confirms that PACCAR's component part—the glider kit—has one reasonably foreseeable use. And PACCAR has failed to show that it offered, and W&W rejected, the allegedly necessary safety features or that the integrated glider kit can be used safely without them. Rather, questions of material fact remain on these issues, making summary judgment in favor of PACCAR inappropriate.

### A. Component-part manufacturers have no duty under the IPLA to install safety features when it is foreseeable that the final manufacturer will put the component to different uses depending on how it integrates the component into the final product—but this is not the case here.

There is little Indiana caselaw regarding a component-part manufacturer's duty to include safety features on its component part. However, two decisions explain situations in which a component manufacturer does not have this legal duty under the IPLA.

In *Shanks v. A.F.E.*, a component part was intended for use in an intricate operation that "could have taken many forms, depending on the needs of the owner and the imagination of the designer." 275 Ind. at 249, 416 N.E.2d at 838. This Court held that the component-part manufacturer had no duty to install additional safety features because it could not know "the specific context in which such warning devices could or should be used." *Id.* at 250, 416 N.E.2d at 838.

Similarly, in *Del Signore v. Asphalt Drum Mixers*, the district court concluded that a component-part manufacturer had no way of knowing how the owner of an asphalt-producing complex would use the component part. 182 F. Supp. 2d at 746. The court pointed out that the facility could have taken many forms depending on the owner's specific needs. *Id.* at 745–46. Because the component manufacturer could not know "how safety features should have been incorporated into [the] complex," the court held that the duty to install any safety features fell solely on the owner of the facility. *Id.* at 746.

These decisions reveal that a component-part manufacturer has no duty under the IPLA to include safety features when three conditions are met: (1) the end product has multiple anticipated configurations, (2) the end manufacturer determines which configuration the product takes, and (3) the different anticipated configurations prevent the component-part manufacturer from reasonably knowing whether and how safety features should be included with the part.

Here, however, PACCAR has pointed to no anticipated end configuration that prevented it from reasonably knowing whether certain safety features related to the inevitable forty-foot blind spot should be included. The designated evidence indisputably shows that PACCAR's sleeper-cab glider kit has one reasonably foreseeable use—to be combined with an engine, transmission, and exhaust system into an over-the-road semi. And there is no reasonable dispute that an over-the-road semi with a sleeper cab is, at some point, going to be used in reverse, and that the glider kit—both as supplied and as integrated—has a forty-foot blind spot. So unlike in *Shanks* and *Del Signore*, here multiple anticipated end configurations do not leave the component-part manufacturer without a duty, as a matter of law, to include safety features necessary to adequately abate inherent dangers.

But this does not mean that a manufacturer of a component part with one reasonably foreseeable use will necessarily owe a duty, as a matter of law, to include allegedly necessary safety features. Rather, the component-part manufacturer has two paths to relieve itself of such a duty. We examine those in detail below, applying them to the facts before us.

### B. Component-part manufacturers have no duty under the IPLA to install safety features if they make one of two showings; PACCAR has made neither.

Existing precedent does not squarely address a component-part manufacturer's duty to install safety features when the part has one reasonably foreseeable use. But we find instructive both federal caselaw and section 5 of the Restatement (Third) of Torts: Products Liability—commonly referred to as the "component parts doctrine," *see Davis v. Komatsu Am. Indus.*, 42 S.W.3d 34, 38 & n.6 (Tenn. 2001). Drawing from these sources, we conclude that a component-part manufacturer will have no duty, as a matter of law, to install safety features if it makes one of two showings: (1) the safety features were offered to, and declined by, the final manufacturer or (2) the integrated product can be used safely without the allegedly necessary safety features. Here, PACCAR has failed to make either showing.

### 1. Under the IPLA, component-part manufacturers have no duty to install safety features if the final manufacturer was offered, and declined, the features.

In *Anderson v. P.A. Radocy & Sons, Inc.*, an electrician was fatally electrocuted while standing inside a metal basket that was attached to a crane. 865 F. Supp. 522, 526 (N.D. Ind. 1994) (applying Indiana law), *aff'd*, 67 F.3d 619 (7th Cir. 1995). An IPLA claim against the component-part manufacturer of the metal basket alleged in part that the manufacturer should have provided a bucket with insulating material—such as fiberglass—to reduce the risk of electrocution. *Id.* at 526, 530–31. The district court disagreed, noting that the electrician's employer had the option of purchasing a fiberglass bucket from the component-part manufacturer, but chose not to. *Id.* at 531. The court held that "a party cannot be liable for failing to equip its products with an optional device that . . . [was] knowingly rejected." *Id.*

We agree. When safety features are offered, the final manufacturer is in the best position to decide which features are necessary—and which are not—for the environment in which the integrated product will be used. *See Parks v. Ariens Co.*, 829 F.3d 655, 657–58 (8th Cir. 2016) (collecting cases). And so, we hold that under the IPLA, a component-part manufacturer has no duty to include optional safety features that were offered to, and rejected by, the final manufacturer.

Here, however, PACCAR has not shown the absence of a material factual dispute that it offered, and W&W rejected, the alleged necessary safety features. It is true that PACCAR designated evidence from one of its engineers that W&W did not choose the optional rear window or backup alarm, and that a rear-view camera was incompatible with the glider kit because of the engine W&W installed. But it also designated W&W's response to a request for admissions, in which W&W "denies that it was provided with a list of options from which to identify or select the options that i[t] desired." PACCAR did not provide anything to refute W&W's response, such as a purchase order or invoice identifying specific safety features that were offered and rejected.

Thus, PACCAR has not established that it had no duty, as a matter of law, to install safety features based on a showing that W&W declined those features.

### 2. Under the IPLA, component-part manufacturers have no duty to install safety features if the part is safe for its reasonably foreseeable use without the features.

Comments to the Restatement (Third) of Torts: Product Liability § 5(a) (Am. Law Inst. 1998), which include supporting caselaw, suggest that when a component part has one reasonably foreseeable use, the part's manufacturer will have no duty to install safety features if it establishes that the integrated component has safe uses without them. *See id.* § 5 reporters' note to cmt. c. But when a component-part manufacturer fails to demonstrate that the integrated component may be safe without safety features, "liability may attach." *Id.* § 5 reporters' note to cmt. b. A federal circuit decision explains the underlying reason for this approach.

In *Fleck v. KDI Sylvan Pools, Inc.*, a man was severely injured when he dove headfirst into an above-ground pool. 981 F.2d 107, 112 (3d Cir. 1992). During litigation that followed, the parties disputed whether the pool liner was defective because it lacked depth markers and warnings. *Id.* at 112, 117.

The component-part manufacturer argued that it had no duty, as a matter of law, to include those safety features "because a replacement pool liner is a component part that is later incorporated into a final product." *Id.* at 117. Specifically, it argued that the pool liner is an "inert, innocuous thing" that cannot cause damage by itself, but only once it is incorporated into the final product. *Id.* at 118–19.

The court rejected this argument. It noted that although "the danger arises only when incorporated into the pool and filled with water, when the danger arises is irrelevant"—rather, the issue was whether the lack of safety features and warnings on the pool liner rendered it defective. *Id.* Because the component-part manufacturer "knew that its liner would ultimately be incorporated into a pool, and nothing else, it [could] then

reasonably foresee the potential risk" of failing to include certain features that would mitigate the danger. *Id.* at 118. Since the component-part manufacturer could foresee that risk, it was not relieved of its duty to include those safety features. *Id.* at 118–19.

Thus, *Fleck* explains that if a manufacturer of a component part with one anticipated use can reasonably predict that the lack of safety features leaves the final product dangerous, then the manufacturer may not escape a duty, as a matter of law, to include the features. But what logically follows from that principle is the following: if a component-part manufacturer cannot reasonably predict the risk of omitting safety features to mitigate the danger of the part's anticipated use, then it should be relieved of a duty, as a matter of law, to include those features. And a component-part manufacturer can demonstrate its inability to reasonably predict such a risk by making the following showing: that its part—once integrated for its anticipated use—can be used safely without the allegedly necessary safety features. This showing would relieve the component-part manufacturer of a duty under the IPLA, as a matter of law, to include allegedly necessary safety features.

Here, PACCAR failed to show the absence of a genuine issue of material fact that the glider kit, once built out as an operable semi, can be used safely without the allegedly necessary safety features. We recognize that PACCAR cites standards from the Mine Safety and Health Administration to support its assertion that "[i]n certain applications and environments, backup alarms are disfavored because people nearby can become de-sensitized to the sound." But this evidence relates to only one safety feature—backup alarms. Brewer has alleged that other features should have been included. And the fact that one specific kind of safety feature may be ineffective does not mean that the component-part manufacturer must have no duty, as a matter of law, to include others.

We further recognize PACCAR's designated evidence that a spotter should have been in place on the day of the accident to guide the driver as he reversed the semi. While this may be true, it does not establish that a spotter **alone** could make the integrated glider kit's use—without other safety features—safe.

Thus, PACCAR has not established that it has no duty, as a matter of law, to include the safety features Brewer alleges are necessary for the glider kit's reasonably foreseeable use.

## II.   The sophisticated-user defense applies to IPLA defective-design claims for a lack of safety features.

Last, we address a defense PACCAR has implicitly raised to challenge Brewer's design-defect claim: the sophisticated-user defense. Until now, IPLA caselaw has addressed this defense only in connection with inadequate-warning claims. *See, e.g.*, *Smock Materials Handling Co. v. Kerr*, 719 N.E.2d 396, 401, 403 (Ind. Ct. App. 1999); *Nat. Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 162–64 (Ind. Ct. App. 1997), *trans. denied*.

The sophisticated-user defense typically exempts a manufacturer from providing warnings about a product's potential dangers when the users of the product are—or should be—already aware of them. *See Nat. Gas Odorizing*, 685 N.E.2d at 163. Because this defense focuses on the user's actual or constructive knowledge of the danger, its applicability "is almost always a question for the trier of fact." *Id.* at 164.

Today we find that, given certain similarities between inadequate-warning claims and design-defect claims, the sophisticated-user defense should also be available to challenge design-defect claims.

Both IPLA claims for inadequate warnings and those for defective design are based in negligence. *See* I.C. § 34-20-2-2. To recover damages, a plaintiff asserting either type of claim "must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product or in providing the warnings or instructions." *Id.* In other words, both design-defect claims and inadequate-warning claims focus on the reasonableness of the manufacturer's conduct. Accordingly, both types of duty—to design a product with adequate safety features and to provide adequate warnings—may hinge on a user's knowledge or level of sophistication.

Our Court of Appeals provided an excellent list of factors for the trier of fact to balance in determining whether a manufacturer has satisfied its

duty to warn when raising a sophisticated-user defense. *Nat. Gas Odorizing*, 685 N.E.2d at 164. Revised to account for design-defect claims alleging failure to include safety features, those factors are: the nature, complexity, and associated dangers of the integrated product; the dangers posed by a lack of safety features; and the user's ability to include the safety features. *Cf. id.* (listing factors tailored to the "sophisticated intermediary" variety of the defense). This is not an exhaustive list, and each case may present unique circumstances and factors.

Here, PACCAR has asserted that glider kits are sold to and used by "sophisticated purchasers." PACCAR also refers to W&W as a "sophisticated" commercial entity, a "sophisticated" final manufacturer, and a "sophisticated" customer. Those allegations essentially assert a sophisticated-user defense. But, as stated above, this defense is suited for the trier of fact, not for summary judgment. *See id*. And, so, PACCAR can make this argument to the trier of fact on Brewer's claims for defective design and for inadequate warnings.

## Conclusion

PACCAR's designated evidence fails to establish that it had no duty, as a matter of law, to include certain blind-spot safety features on its glider kit. We therefore reverse the trial court's grant of summary judgment to PACCAR and remand for proceedings consistent with this opinion.

David, Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT

John P. Daly, Jr.

Jared A. Harts

Golitko & Daly, P.C.

Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Jeffrey J. Mortier

Maggie L. Smith

Blake N. Shelby

Frost Brown Todd LLC

Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE

THE INDIANA LEGAL FOUNDATION

Mark J. Crandley

Barnes & Thornburg LLP

Indianapolis, Indiana